## Kane *v.* Policemen's Relief and Pension Fund of Pittsburgh et al., Appellants.

Argued September 26, 1939. Before SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*John A. Metz,* for appellant.

*H. D. Hirsh,* with him *Louis Abromson,* for appellee.

OPINION BY MR. JUSTICE MAXEY, December 8, 1939:

This is an appeal from the order of the Court of Common Pleas of Allegheny County in sustaining plaintiff's demurrer and directing that a writ of peremptory mandamus issue to defendants, requiring them to pay plaintiff a pension at the rate of $90.00 per month beginning with the month of November, 1935.

The facts are these: The Police Pension Fund Association of the City of Pittsburgh, a non-profit corpo-

ration (hereinafter referred to as the old fund), was chartered in 1893 by the Court of Common Pleas of Allegheny County, in accordance with the terms of the Corporation Act of April 29, 1874. The purpose of the association was to accumulate funds for the payment of pensions (a) to its retired members and (b) to families of deceased members. The membership was limited to employees of the Bureau of Police of the City of Pittsburgh. It was provided in the by-laws that members who had served in the Bureau for a period of 20 years and retired, would become eligible to a pension. The principal source of income of the association was derived from the payment of 2% of the employee's monthly salary, and after 1915, also from contributions of the City of Pittsburgh, made mandatory under the Act of May 20, 1915, P. L. 569, and amendments thereto.

William J. Kane, the plaintiff, entered the service of the Bureau of Police in 1900, and, with the exception of several years, worked continuously for the Bureau for an aggregate period of more than 20 years. He became a member of the old fund immediately upon his employment, paid the necessary dues, and complied in every way with the requirements and by-laws of this association. On November 1, 1927, he retired and became eligible to receive and did receive a pension in the sum fixed by the by-laws, of $90.00 per month, until October, 1935. Immediately upon his retirement, he accepted the position of Chief of Police of Mt. Lebanon Township, Allegheny County, which position he has continuously held.

Under the Act of May 22, 1935, P. L. 233, 53 PS sec. 9444 et seq., there was created the Policemen's Relief and Pension Fund of the City of Pittsburgh (hereinafter referred to as the new fund), which became effective on September 1, 1935. It is evident from this act that it was the intention of the legislature that the new fund should be a complete substitute for the old

one. While the legislature was under no obligation to provide for the admission of members of the old fund into the new one, it could not withdraw or take away a member's right in the old fund, nor could it withhold from it the mandatory provisions as to contributions. We said in *McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 405: "An employee fulfilling these conditions [contributions of a part of his salary, required service and reaching superannuation age] then has a vested interest in retirement pay which cannot be destroyed, weakened or departed from by subsequent legislation."

Subsection 4 of section 8 of the Act of 1935 provides for the admission into the new fund of members of the old fund who had, at the effective date of the act, retired and who had not forfeited their rights to receive pensions. That subsection reads as follows: "Section 8—The members of the fund shall consist of . . . (4) Each member of any other . . . fund in the same city, existing or created for purposes similar to the purposes of the fund created by this act, to whom, prior to the effective date of this act, a pension has been granted by the said other . . . fund, and who has not forfeited his right to receive the said pension, whether at the effective date of this act he is receiving the said pension, or not, if, and only if, he waives his right to receive from the said other . . . fund any other pension than a death benefit, and applies for membership in the fund created by this act. The waiver, in such case, is only to take effect, as of the date that the member first receives pension payments from the fund created by this act." Plaintiff, immediately after this enactment, received a letter, accompanied by an application and waiver form, from the old fund, which advised him that he "can go on pension in the new fund as soon as application for membership is received." Plaintiff filed application for membership in the new fund in the form prescribed by the act, reading as follows: "I hereby

make application for membership in the [new fund] . . . and in consideration of being admitted to membership therein, I hereby waive all rights to receive or be paid any pension other than a death benefit from the [old fund] . . ., and consent that the charter and by-laws of the [old fund] . . . shall be so amended as to provide for the payment of death benefits only, and no other pensions. This waiver to be effective as of the month for which I receive my first pension from the [new fund]. . . ."

Pursuant to the provisions of sub-section 1 of section 13 of the Act of 1935, plaintiff became a member of the new fund. The new fund paid him a pension for the month of September, 1935, in the sum of $90.00, but the Board of Managers of the new fund, upon learning that plaintiff was employed by the Township of Mount Lebanon, a municipal sub-division of the State of Pennsylvania, refused to make him further payments, on the theory that under section 16 of the act his pension is suspended during the term of his employment by a sub-division of the state. Section 16 reads as follows: "Any beneficiary of the fund who may obtain employment in the service of the City itself, or County or State, or any political sub-division thereof, shall suffer suspension of his pension of the fund during the time of such employment."

Subsequently, at two different organization meetings of new Boards of Township Commissioners of Mt. Lebanon Township, held, respectively, in January, 1936, and in January, 1938, plaintiff was re-elected Chief of Police of that township. Plaintiff repeatedly demanded the payment of his pension from the new fund and upon its refusal to comply with his request, he filed his petition for a writ of alternative mandamus. To the answer filed by defendants, plaintiff demurred. Thereupon, the demurrer was sustained and a writ of peremptory mandamus was directed to issue against defendants.

The court below was of the opinion that section 16 of the Act of 1935 is not applicable to the present plaintiff. It said, inter alia: "On November 1, 1927, upon his [plaintiff's] retirement from active service as a member of the Bureau of Police of the City of Pittsburgh, after an aggregate period of more than twenty years of service, and upon his application to the Police Pension Fund Association of the City of Pittsburgh for pension, and the granting of that pension, the rights of William J. Kane became vested. Until such retirement his right was inchoate. This inchoate right became a complete vested right when the conditions connected with the particular retirement system were complied with. This right cannot, therefore, be disturbed by legislation."

Appellants concede that appllee's right to receive a pension from the old fund was a vested right even before he retired on a pension. Appellants say: "This right became vested by virtue of his membership in the old fund, which was a non-profit corporation under the Act of 1874. . . . The pension right of a member of the old fund . . . was a contract right, a vested right by reason of contract. It may be that it was inchoate or incomplete until he had been an employee of the Bureau of Police for a period of twenty years and had been granted a pension, but it was just as much a vested right before he was awarded a pension as it was afterwards." That this is a correct analysis appears from our decision in the McBride Case, supra. In further support of their position on this phase of the case, appellants cite *Marshall v. Pilots Assn.*, 206 Pa. 182, 55 A. 916, where we held that the by-laws of a non-profit corporation constituted the contract which created the rights of the parties and that a substantial change of by-laws could not adversely affect the rights of one who "had contributed his due share of earnings to make up the relief fund of the association" down to the time of his disability. We there said that "when

plaintiff's rights to a special benefit accrued according to such contract, they became fixed and thereafter could only be changed by mutual consent."

The question here comes down to this: Were the vested rights of appellee changed by mutual consent? Appellants claim they were. Their basic contention is that appellee in becoming a member of the new fund signed a waiver of his right to receive a pension other than a death benefit from the old fund and accepted the restrictive conditions of the new fund. An interpretation of his waiver of his right to be paid out of the old fund (other than his right to be paid a death benefit), in order to harmonize with the spirit and purpose * of the retirement acts, must be that he waived only his right to look to the *old* fund as the source of his retirement pay. He accepted the *new* fund as the *exclusive* source of that payment but he did not thereby waive his right to be paid what was his due even though he might be employed by some other political subdivision of the State. It cannot be reasonably inferred that by his waiver he intended to waive any valuable retirement right of his which had already vested when he made his waiver.

Moreover, section 16 of the Act must be construed as prospective, intended to apply to those joining the police force after the passage of the Act, i. e., as to those whose rights were inchoate.

The judgment is affirmed.

* "The general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effecting its purpose and object, even if it be necessary, in so doing, to restrict somewhat the force of subsidiary provisions that otherwise would conflict with the paramount intent. An interpretation which defeats any of the manifest purposes of the statute cannot be accepted. Every statute, it has been said, should be construed with a reference to its object, and the will of the lawmakers is best promoted by such a construction as secures that object and excludes every other": 25 R. C. L., p. 1013, sec. 253.