## Commonwealth v. Dierkes

*Philip J. O'Malley,* Assistant District Attorney, for Commonwealth.

*John A. Luchsinger,* for defendant.

LIPPINCOTT, J., June 29, 1970.—David T. Dierkes was charged with operating a motor vehicle while under the influence of intoxicating liquor after being stopped by a policeman on June 28, 1969, for driving in an erratic fashion. Pursuant to The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §624.1, a breath-chemical test[1] was administered by the police for the purpose of determining the alcoholic content of his blood.

Defendant has filed a timely petition to suppress the results of such test on the ground that the police failed to advise him, before administering the test, that he had the right under the statute to have a physician of his own choosing then and there administer a similar test. At the suppression hearing, it was stipulated that such advice was not given by the police officer. The sole issue thus being entirely nonfactual and one of first impression in the Commonwealth, the court directed that the matter be presented to the court en banc for consideration.

The applicable statute, found at 75 PS §624.1, provides that the operator of a motor vehicle in Penn-

---

[1] Mobat "Sober-Meter" test.

sylvania shall be deemed to have consented to a breath-chemical test for the purpose of determining the alcoholic content of his blood, that the police may administer the test if they have reasonable grounds for believing defendant to be under the influence, and that refusal to take the test shall be grounds for suspending the license of a defendant. It is further stated in subsection (g) that "The person tested *shall be permitted* to have a physician of his own choosing then and there administer a breath or blood chemical test in addition, and the results of such tests shall also be admissible in evidence" (Italics supplied.) The issue presented is whether the police must inform a defendant of such right.

In no other area of criminal law is a breath-chemical test made, for all practical purposes, the final arbiter of guilt or innocence. We take judicial notice that such tests are subject to many variables, including to some extent subjective analysis by the person administering the test. Recognizing these factors, we believe the legislature saw a serious need for and obvious fairness in permitting an additional chemical test by an accused's own physician as a double check, particularly when the case is such a close one that the officer cannot otherwise determine if defendant is under the influence of intoxicating liquor.

We are of the opinion that very few drivers in our Commonwealth are aware of the safeguard contained in 75 PS §624.1(g). Unless the police advise them of this right at the accusational stage, the right afforded a defendant will become a dead letter in the law. Certainly, by the time an accused consults his attorney, who could properly advise him, the intervening time would render an additional test worthless and the legislative policy and purpose would be defeated.

On the other hand, a simple statement by the

police officer advising an accused of his right to have a doctor of his choice present would promote and effectuate the legislative policy and intent.[2] The will of the legislature is best promoted by such a construction as secures the object of promoting the legislative purpose and policy and excludes every other: Kane v. Policemen's Relief and Pension Fund of Pittsburgh, 336 Pa. 540, 9 A.2d 739 (1939).

While there are no Pennsylvania cases on point, we find several analogous situations under The Vehicle Code. For example, 75 PS §1202(d) provides that a defendant arrested for a summary offense "shall be given the opportunity of having an immediate hearing, or of giving bail" for a later hearing. We have held that this makes it mandatory that defendants be advised of such right and that the failure to so advise is fatal. See In Re: Petition of Emberger and Matthews, 57 Del. 182 (1969). Our Chester County courts have similarly ruled in Commonwealth v. Holland, 43 D. & C. 2d 435 (1967), and Commonwealth v. Christensen, 12 Chester 107 (1964), wherein it was stated, pages 109, 110:

"Section 1202(d) of the Vehicle Code clearly imposes an obligation . . . The words of the act are specific, the defendant is to be 'given the opportunity' and clearly implies the affirmative obligation . . . to so accord. The choice . . . is the defendant's . . . unless, opportunity having been given, defendant fails or refuses to exercise his statutory right. The obligation is to present the 'opportunity' and no such opportunity was given here."

Also of interest is Commonwealth v. Madura, 11 Lebanon 412 (1967), involving an earlier version of 75 PS §624.1, which provided for a chemical-breath

---

[2] We have observed in many cases that as a practical matter, most police officers *do* advise defendants of such a right.

test only if the operator gave specific consent. Although the case was decided on other grounds, the court noted by way of dicta that the provision for specific consent must be interpreted to imply a duty upon the police to advise the operator that he may refuse to take the test. The court stated, page 417:

"It can hardly be characterized as a legal right unless this is so. The Supreme Court of the United States in Escobedo v. Illinois, 378 U.S. 478 aptly observed that, 'No system of criminal justice can, or should, survive if it comes to depend for its continued effectiveness on the citizens abdication through unawareness of their constitutional rights.' "

The Madura court obviously found no substantial difference in this regard between constitutional rights and statutory rights. With this reasoning, we agree.

Regarding constitutional rights, counsel for the Commonwealth calls our attention to Commonwealth v. Bonser, 215 Pa. Superior Ct. 452, 258 A.2d 675 (1969), involving a defendant charged with operating a motor vehicle while under the influence, who uttered incriminating statements during interrogation without benefit of the Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966). The court held that the constitutional safeguards under Miranda are applicable whether an individual be accused of felony or misdemeanor. The issue before us for determination was not raised nor was the applicable statutory language mentioned or referred to in the opinion. No reasonable inference can be drawn from such opinion that the court was thereby limiting the duty to advise individuals of their rights to the Miranda warnings alone, or drew any distinction between constitutional rights and statutory rights. On the other hand, in applying Mir-

anda, the court did recognize the serious nature of a conviction for drunken driving in our Commonwealth and evidenced an intent to provide the accused with as much protection under the Constitution as an accused felon.

The Commonwealth argues that requiring the police to advise defendants of their rights to have their own doctor present would preclude the use of a breath-chemical test in cases where a defendant is so intoxicated that he could not intelligently waive such right. This may be true, but in such cases a chemical test to determine intoxication is unnecessary.[3] The purpose of the act is to determine intoxication in borderline cases. Where a defendant is obviously intoxicated, a breath test is superfluous.

We also find that People v. Kerrigan, 8 Mich. App. 216, 154 N.W. 2d 43 (1967), strongly pressed upon us by the Commonwealth, is distinguishable. In that case, it was held that a similar provision in the statute was directory only. The reason given, however, was that: "Formerly the statute required . . . that the defendant be given such advice . . . The legislature clearly expressed their intention to eliminate the requirement that the person charged *be advised of his right* to chemical tests by deleting the language that provided for it."

No such expression of legislative intent is present in the statutory history of the Pennsylvania act. On the contrary, we find that the intention of the legislature was to provide a safeguard against the human

---

[3] The magistrate's transcript in the present case states that the arresting officer testified that defendant was stopped because of erratic driving, that he smelled of alcohol, staggered, had a slurred speech and admitted drinking. In the officer's opinion, he was unfit to operate because of intoxication. These facts would probably be sufficient to convict without the results of the chemical test.

inaccuracies possible in performing breath or blood chemical tests.

We, therefore, conclude that the police officer had a duty to advise defendant of his right to an additional chemical test and that the only appropriate and meaningful sanction to be attached to this failure to perform such duty is to suppress the results of the Commonwealth's breath-chemical test.

### ORDER

Now, June 29, 1970, defendant's rule to show cause why the results of the Commonwealth's "Mobat" test should not be suppressed is made absolute. An exception is allowed the Commonwealth.