450 A.2d 1342

Francis J. CATANIA, Charles W. Sweet, Paul R. Beckert, Edward J. Bradley, John N. Sawyer, Edmund V. Ludwig, Joseph F. O'Kicki and Livingstone M. Johnson, as individuals, on behalf of themselves and all others similarly situated

v.

COMMONWEALTH of Pennsylvania, STATE EMPLOYEES' RETIREMENT BOARD and Robert L. Cusma, in his capacity as Secretary of the State Employees' Retirement System and Robert E. Casey, in his capacity as Treasurer of the Commonwealth of Pennsylvania.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1982.

Decided June 25, 1982.

Reargument and Reconsideration Denied Sept. 24, 1982.

---

686

Henry T. Reath, Alexis J. Anderson, Philadelphia, for appellants.

Mary Ellen Krober, Asst. Atty. Gen., for appellees.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and HUTCHINSON, JJ.

### ORDER

PER CURIAM:

■ Summary judgment granted in favor of plaintiffs Beckert, Catania, and Sweet. The Court being equally divided, summary judgment in favor of the remaining plaintiffs is denied.*

O'BRIEN, C. J., files an opinion in support of the denial of summary judgment to the remaining plaintiffs, in which ROBERTS and HUTCHINSON, JJ., join.

NIX, J., files an opinion in support of the grant of summary judgment to the remaining plaintiffs, in which LARSEN, J., joins.

---

* NIX, LARSEN and FLAHERTY, JJ., would add the following to the Court's order:

Mr. Justices Nix, Larsen and Flaherty take issue with the use of the word "denied" and are of the view that the word "undecided" is accurate. The inability of this Court to reach a definitive answer on the request for summary judgment on behalf of the remaining plaintiffs does not preclude the Commonwealth Court from considering the question and reaching its own decision.

LARSEN, J., files an opinion in support of the grant of summary judgment to the remaining plaintiffs.

FLAHERTY, J., files an opinion in support of the grant of summary judgment to the remaining plaintiffs, in which LARSEN, J., joins.

McDERMOTT, J., did not participate in the consideration or decision of this case.

## OPINION

O'BRIEN, Chief Justice.

Plaintiffs, Francis J. Catania, Charles W. Sweet, Paul R. Beckert, Edward J. Bradley, John N. Sawyer, Edmund V. Ludwig, Joseph F. O'Kicki and Livingstone M. Johnson are judges of the courts of common pleas of various counties. In January, 1981, the plaintiffs filed a two-count complaint, one in mandamus and the other for declaratory judgment in the Commonwealth Court, naming as defendants the State Employees' Retirement Board, Robert L. Cusma, Secretary of the State Employees' Retirement System and Robert E. Casey, Treasurer of the Commonwealth. In essence, the plaintiffs sought a ruling that modifications of the State Employees Retirement Code of 1959,[1] adopted in both 1972 and 1974, did not apply to plaintiffs and others similarly situated. Following completion of the pleadings, plaintiffs filed a motion for summary judgment. Before the Commonwealth Court ruled on the motion, this Court, at the plaintiffs' request, accepted plenary jurisdiction and must now determine whether summary judgment should be granted.

A brief review of the pension laws is necessary. Under the Retirement Code of 1959, a judge's retirement benefits consisted of:

". . . four one-hundredths (4/100) of his final average salary for each year of service during his first ten (10) years as judge, and thereafter equal to three one-hundredths (3/100)

[1]. Act of June 1, 1959, P.L. 392, No. 78, § 101, et seq.

thereof for each such year of service . . . not [to] exceed eighty (80) percent of his final average salary."

§ 401(1)(e). "Final Average Salary" was defined as:

". . . The highest average annual compensation received by a contributor as a state employe during any five (5) nonoverlapping periods of twelve (12) consecutive months of contributory service. . ."

§ 102(19). Judges were eligible to begin collecting retirement benefits after ten years of judicial service, § 102(23.1) and upon reaching sixty years of age § 102(14). Simply put, a judge's annual retirement benefits could be calculated by the following formula:

Benefits = Final Average Salary $\times$ 10 years $\times$ .04

$$+$$

Final Average Salary $\times$ years in excess of ten $\times$ .03 [2]

In 1972, the Commonwealth Compensation Commission raised the annual salaries of the judges of the courts of common pleas from $30,000 to $40,000. The Commission, however, decided that for the purpose of determining retirement benefits, the "final average salary" component of the equation would be frozen at $30,000 as of June 22, 1972.

The legislature then passed the State Employees' Retirement Code of 1974.[3] For purposes relevant to our inquiry, the Retirement Code of 1974 made the following changes.

**2.** A regular, or Class "A" employee's benefits = Final Average Salary $\times$ number of years $\times$ .02. Thus, a judge, working ten years with a salary equal to that of a Class "A" employee, would receive an annual pension twice that of the Class "A" employee. Judges, however, were required to contribute twice the amount required from a Class "A" employee for the first ten years and one and one-half times that amount for each year thereafter. § 301(1)(e). As a general rule, Class "A" employees contributed 5% of their annual compensation into the fund so that generally, a judge would contribute 10% of his compensation for each of the first ten years and 7.5% for each year thereafter. Thus, a direct correlation existed between the benefits a retiree would receive and the contributions that a retiree made into the fund.

**3.** Act of March 1, 1974, P.L. 125, No. 31, § 1 et seq., 71 Pa.C.S. § 5101, et seq. (Supp. 1981–82).

The 1972 freeze on "final average salaries" was abolished retroactively to January 1, 1973 and is now defined as:

"The highest average compensation received as a member during any *three* nonoverlapping periods of four consecutive calendar quarters during which the member was a state employee..."

71 Pa.C.S. § 5102 (Emphasis Added). While benefits and contributions for Class "A" employees generally remained the same, a judge's contributions were reduced 25% from 10% to 7.5% of annual compensation for the first ten years and from 7.5% to 5.625% for each year thereafter.[4] Retirement benefits were also reduced 25% in a similar proportional fashion, so that the multipliers which were .04 and .03 under the Retirement Code of 1959 were now reduced to .03 and .0225 respectively. Retirement benefits may not exceed the highest compensation during any period of twelve consecutive months. 71 Pa.C.S. § 5702(c). Employees are also given a number of options in deciding how retirement benefits will be paid. 71 Pa.C.S. § 5705(a).

Individual plaintiffs fall into one of three separate classes. Plaintiffs Catania, Sweet and Beckert completed ten years of judicial service after June 22, 1972, but before March 1, 1974, the effective date of the Retirement Code of 1974. Plaintiffs Bradley, Sawyer, O'Kicki and Ludwig commenced judicial service before June 22, 1972, and completed ten years of service after March 1, 1974. Plaintiff Johnson commenced judicial service between June 22, 1972, and March 1, 1974, and will complete ten years of service after the latter date.

Plaintiffs now argue that the 1972 and 1974 changes cannot apply to them because members of a public retirement system, at the time of taking office and joining the

---

4. The "basic contribution rate" is set at 5% of annual compensation. "Regular member contributions" are defined as "the product of the basic contribution rate, the class of service multiplier if greater than one and the compensation of the member." Finally a judge's class of service multiplier is set at 1.5 for the first ten years and 1.125 for each subsequent year. 71 Pa.C.S. § 5102. These class of service multipliers are 25% less than the corresponding multipliers of the Code of 1959.

system, acquire a contractual right to receive pension benefits undiminished during their term of office. They further argue that the provision of the Pennsylvania Constitution which proscribes a decrease in judicial salaries unless the compensation of all salaried officers is decreased, similarly prohibits application of the changes to them. Plaintiffs thus argue that their motion for summary judgment must be granted.

Pa.R.C.P. 1035(b) provides:

"The judgment sought shall be rendered if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."

Further, summary judgment is to be granted only in the clearest of cases where the right in question is clear and free. from doubt. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979). I am convinced, however, that a review of the applicable case law and relevant constitutional provisions compels the conclusion that while plaintiffs Catania, Sweet and Beckert are entitled to summary judgment the remaining plaintiffs have failed to establish their clear entitlement to the relief requested.

It is well-settled that in Pennsylvania public retirement benefits are viewed as deferred compensation and not as gratuities. *Wright v. Retirement Board of Allegheny Co.,* 390 Pa. 75, 134 A.2d 231 (1957); *Retirement Bd. of Allegheny Co. v. McGovern,* 316 Pa. 161, 174 A. 400 (1934). Such a distinction is critical, for in those jurisdictions which view such benefits as gratuities, the benefits are alterable at the will of the grantor. Once the benefits are deemed to be a form of compensation, an employee obtains certain contractual rights. Both the Constitution of the United States and the Constitution of Pennsylvania contain provisions prohibiting the legislative impairment of contracts. U.S. Const. Art. I, § 10, Pa.Const. Art. I, § 17. Nonetheless, I am unconvinced that a pension plan is absolutely unalterable once a public employee has commenced employment and joined the retirement plan.

In *Retirement Board of Allegheny Co. v. McGovern, supra,* this Court stated:

> "Until an employee has earned his retirement pay, or until the time arrives when he may retire, his retirement pay is but an *inchoate right,* but when the conditions are satisfied, at that time retirement pay becomes a *vested right* of which the person entitled thereto cannot be deprived: it has ripened into a full contractual obligation."

*Id.,* 316 Pa. at 169, 174 A. at 404–05. (Emphasis Added).[5] Implicitly, at least, inchoate rights were not held to come under the protection of Art. I, § 17 of the Pennsylvania Constitution.

In *McBride v. Retirement Board of Allegheny Co.,* 330 Pa. 402, 199 A. 130 (1938), appellant began collecting a pension from Allegheny County, having worked for twenty years and reached age 50 as required by the retirement law then in existence. Immediately thereafter, McBride commenced employment with the Commonwealth. Subsequently, the retirement law was amended to allow the suspension of retirement benefits should the retiree accept employment with another governmental unit. This Court held that the aforementioned amendment did not apply to McBride, explicitly stating:

> "We endeavored to specifically hold in the *McGovern* case that eligibility for retirement pay is complete as soon as an employee or member of a retirement system has satisfied the conditions requisite for retirement.... His rights to such pay are fixed as of the time he attained eligibility. Until retirement pay is earned as above described the right is inchoate. During this period retirement pay is being built up. The inchoate right becomes a *complete vested right* when the conditions connected with

5. Since retirement pay is a form of deferred compensation and an employee's contributions are deducted from his salary, the *McGovern* court was compelled to point out that an employee had an immediate vested right in his own contributions.

the particular retirement system are complied with. *This right* cannot be *thereafter* disturbed by legislation."

*Id.,* 330 Pa. at 405–06, 199 A. at 132 (Emphasis Added).

In *Kane v. Policemen's Relief & Pension Fund,* 336 Pa. 540, 9 A.2d 739 (1939), appellant had retired from the Police Department of the City of Pittsburgh in 1927 and began collecting a pension from the Police Pension Fund Association of the City of Pittsburgh. Immediately thereafter, Kane accepted employment as the police chief of Mt. Lebanon Township. In 1935, the legislature created the Policemen's Relief & Pension Fund of the City of Pittsburgh. The legislature also provided that members of the old fund could, upon election, become members of the new fund. The new fund had a provision that any pensioner accepting other public employment should have his benefits suspended while so employed. When Kane elected to join the new fund, the managers of the new fund attempted to suspend his pension payments. This Court held that Kane could continue collecting his pension, stating:

"The pension right of a member of the old fund . . . was a *contract right,* a vested right *by reason of contract.* It may be that it was inchoate or incomplete until he had been an employee of the Bureau of Police for a period of twenty years and had been granted a pension, *but it was just as much a vested right before he was awarded a pension as it was afterwards."*

*Id.,* 336 Pa. at 545, 9 A.2d at 742 (Emphasis Added). It is the emphasized language of the above-quoted passage that forms the basis of the position espoused by plaintiffs.

The plaintiffs argue:

"A contract with its attendant rights and obligations is formed on the date of hire, not some indeterminate future date when certain events relating to eligibility to receive payments may or may not occur. When a judge takes office the pension rights are set; factors like years of service and age affect only the amount of the pension, rather than the right to it."

This Court has recognized the existence of the "contract theory" when dealing with pensions, but application of that theory does not require that all specifics of a pension plan be carved in stone as of the date an employee joins a plan.

Plaintiffs believe that *Baker v. Retirement Board of Allegheny Co.,* 374 Pa. 165, 97 A.2d 231 (1953) and *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954) support their view that the contract theory absolutely forbids any changes in a pension law after an employee joins the retirement plan. In *Baker,* the employee retired from the City of Pittsburgh in 1929 and began collecting a pension. Almost immediately thereafter, he commenced employment with Allegheny County. In 1937, the county pension law was amended to prohibit any county employee from qualifying for a pension if that employee was receiving another governmental pension while in the county's employ. When Baker retired from the county, he was denied pension benefits because of the 1937 amendment. Despite the fact that Baker had neither worked the necessary number of years nor reached the required age to qualify for a pension from the county at the time of the 1937 amendment, the Court held that the changes wrought by the amendment did not apply to Baker.

> "As of the time he joined the fund, his right to continue membership therein, under the same rules and regulations existing at the times of employment, was complete and vested. The legislature could not thereafter constitutionally alter the provisions of his already existing contract of membership. *His rights in the fund could only be changed by mutual consent.*"

*Baker v. Retirement Board of Allegheny County, supra* at 374 Pa. 169, 97 A.2d, at 233. (Citations Omitted) (Emphasis Added).

Similarly, in *Hickey v. Pittsburgh Pension Board, supra,* the employee began working for the City of Pittsburgh in 1910. In 1915, the legislature passed a pension law entitling Hickey to collect a pension after working for the city for twenty years and reaching sixty years of age. In 1933, the

1915 law was amended to deny benefits to any pensioner who secured employment with another governmental unit. Hickey retired in the early 1950's after turning sixty and began collecting a pension which was discontinued when he began working for Allegheny County. This Court held that the 1933 amendment did not apply to Hickey.

Plaintiffs would have this Court believe that since Baker had not yet served twenty years when the 1937 amendment was passed, it necessarily follows that their absolutist view of the contract theory is the correct one. Similarly, they believe *Hickey* supports their position because Hickey was not yet sixty when the 1933 amendment was enacted. Plaintiffs' analysis, however, ignores one important factor.

In both *Baker* and *Hickey,* the amendments in question attempted to prohibit an employee from collecting a pension from one political subdivision while simultaneously being employed by another. In *Schmidt v. Retirement Board of Allegheny Co.,* 394 Pa. 105, 145 A.2d 692 (1958), the Court was reviewing a similar law and stated:

> "The Act of 1953 is *not the kind of retirement law which is reasonably related to enhancing or strengthening the actuarial soundness of the retirement fund.* Cf. *Baker v. Retirement Board of Allegheny County,* 374 Pa. 165, 97 A.2d 231 (1953), and *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954). The purpose of the Act of 1953 was to give effect to the public policy against governmental employees receiving more than one retirement allowance from governmental retirement systems."

*Id.,* 394 Pa. at 108, 145 A.2d at 693–4. (Emphasis Added). Defendants argue that the 1974 Code may be applied to plaintiffs because the modifications therein enhance the actuarial soundness of the plan. Plaintiffs do not argue that the instant modifications do not enhance actuarial soundness; rather, plaintiffs believe the "contract theory" precludes the coexistence of that theory with the concept of enhancing actuarial soundness. Again, I do not take such an absolutist view of the "contract theory".

In *Harvey v. Retirement Board of Allegheny Co.*, 392 Pa. 421, 431–32, 141 A.2d 197, 203), this Court stated:

"We may thus summarize the law relating to the rights of a public employee in the retirement system as follows:

"1. An employee who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.

"2. An employee who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of a retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

"3. An employee who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund."

Plaintiffs would have this Court disregard *Harvey,* generally arguing that it is not in the mainstream of case law in this Commonwealth relating to pension laws. I do not agree.

The concept of "actuarial soundness" appears in our case law at least as early as 1934 in *Retirement Board of Allegheny Co. v. McGovern, supra:*

"But underlying all retirement systems of the class we are now discussing, is the legislative object, as well as that of the member employee, that a substantial reserve be built up so that the actuarial soundness of the plan cannot be questioned. This factor is an important one in the relation between state, city and county, as employer, and the employee member, with respect to retirement pay. If a direct attack on it, such as has been made in the present case, is justified, or a weakness in it manifested through actual trial is found to exist, the remedy or relief rests clearly within the relation between employer and employee contemplated by the legislative system for retirement pay. The legislature may from time to time, within the confines of that established relation, alter, change, amend,

and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential. Flexibility in component parts is a paramount necessity to guard against changed conditions and to permit keeping abreast with actuarial science."

*Id.*, 316 Pa. at 175–76, 174 A. at 407.

Further, in *McBride v. Retirement Board of Allegheny Co., supra* 330 Pa. at 408, 199 A. at 133, this Court stated:

"The Board may ... while employee's right is inchoate, adopt such regulation for the betterment of the retirement fund's security. It may increase payments or require other actuarial changes to protect the established principal, but as to employees who have through time built up or acquired their right to retirement pay, on the assurance from the government that it will be fully met, the government must understand that a definite fixed obligation has been assumed."

*See also, Hickey v. Pittsburgh Pension Board, supra* (The Legislature "may strengthen the actuarial fibers.") As *McBride* makes clear, a contractual obligation that may not be broken is one where the employee's pension has vested, regardless of whether that employee either has retired and begun collecting benefits or has chosen to keep working.

There are very few cases where this Court ruled that modifications in a pension plan did in fact relate to the actuarial soundness of the program and thus permitted those changes to apply to employees who were already members of the pension plan. *Harvey* was one such case where the Court held that increasing the age requirement from fifty to sixty related to actuarial soundness and thus could be applied to employees whose pensions had not yet vested. In *Eisenberger v. Harrisburg Police Pension Fund,* 400 Pa. 418, 162 A.2d 347 (1960), the employee commenced working when the retirement plan provided for payment of retirement benefits after the employee had worked for twenty years

and attained age fifty-five. Subsequently, the law was amended, lowering the age requirement to fifty but increasing the years of service requirement to twenty-five. When Eisenberger passed his fiftieth birthday, he retired and attempted to collect pension benefits despite having worked for only twenty years. This Court affirmed the trial court's denial of benefits, stating:

> "The length of service required to qualify an individual for a pension is a material part of the retirement system, and is one of the material actuarial components necessary for the establishment and operation of a proper retirement system. While the City of Harrisburg cannot alter the terms of a pension contract without the consent of the employee if he has already satisfied the conditions for receiving a pension, the city by ordinance, as well as the legislature by enactment, prior to the employee's fulfillment of the conditions, may change or add to these conditions when such changes enhance the actuarial soundness of the fund."

*Id.*, 400 Pa. at 422, 162 A.2d at 348.

I am not unmindful that allowing changes in the retirement laws to enhance actuarial soundness could render nugatory the language in *Kane v. Policemen's Relief & Pension Fund, supra* 336 Pa. at 545, 9 A.2d at 742, where we stated:

> "The pension right . . . was a contract right, a vested right by reason of contract. It may be that it was inchoate or incomplete until he had been an employee of the Bureau of Police for a Period of twenty years and had been granted a pension, *but it was just as much a vested right before he was awarded a pension as it was afterwards.*"

(Emphasis Added). On the other hand, accepting the plaintiffs' absolutist view of the contract theory would erase over fifty years of case law recognizing the right and duty of the legislature to maintain an actuarially sound retirement fund. I do not believe that resolution of this conflict presents an insurmountable obstacle; rather, the problem exists because

of the paucity of cases concerning allowable changes to maintain actuarial soundness.

As any amendments either lowering retirement benefits or tightening eligibility requirements would enhance the actuarial soundness of a fund, the legislature theoretically could set retirement benefits so low, and make eligibility requirements so strict for employees whose pension rights have not vested, as to effectively deny those employees their deferred compensation in the form of retirement benefits. With this in mind, this Court stated:

> "[P]ublic employees who have become eligible for retirement allowance *and those who are in the process of becoming eligible possess certain vested and contractual rights with which the legislature may not constitutionally interfere.*"

*Geary v. Retirement Board of Allegheny Co.,* 426 Pa. 254, 257, 231 A.2d 743, 745 (1967) (Emphasis Added); *Kane v. Policemen's Pension & Relief Fund, supra.*

Other jurisdictions, while maintaining the concept of allowing changes to enhance actuarial soundness, have expressed it in different ways. The matter was best put, in our view, by the Supreme Court of California, which stated:

> "To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in the pension plan which result in disadvantage to employees should be accompanied by comparable new advantages..."

*Allen v. City of Long Beach,* 45 Cal.2d 128, 131, 287 P.2d 765, 767 (1955). There, the applicable pension law was altered in the following respects. Under the old law, a retiree's annual pension benefits were equal to one-half of the salary *currently* attached to the position that the retiree held one year prior to the employee's retirement. The amendment in question proposed abolishing the fluctuating benefits and setting annual benefits at one-half of the average salary the employee *actually received* during the five years preceding

retirement. The court found this change unreasonable because:

> "... Payment of a fixed amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of his pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy."

*Id.,* at 132, 287 P.2d at 767. Further, the challenged amendment attempted to increase employee contributions from 2% of income to 10% of income without a corresponding increase in benefits. As neither of these proposals contained any benefits which could have counterbalanced to obvious detriments suffered by the existing employees, the court found the proposed changes to be unreasonable and hence invalid. *Accord, Opinion of the Justices,* 364 Mass. 847, 303 N.E.2d 320 (1973).

Adopting this approach for use in this Commonwealth would allow the legislature to maintain an actuarially sound retirement fund while still protecting the contract rights of employees that have not completely vested in the sense that the employee is eligible to collect the pension. Furthermore, by allowing changes with corresponding advantages and disadvantages, the employee remains in relatively the same position both before and after the changes.[6]

When reviewing the 1974 Retirement Code in this light, it becomes clear that the changes can be applied to some of the plaintiffs without violating any constitutional provisions of either the United States Constitution or the Pennsylvania Constitution. Further, such an application does not disturb the contract theory which is recognized in our case law.

6. Adopting this standard would, of course, require a partial overruling of *Harvey v. Allegheny Co. Retirement Board, supra,* to the extent that it held that merely increasing the age requirement and applying that change to the existing, nonvested members was allowable to enhance actuarial soundness.

While it is true that plaintiffs' retirement benefits will be somewhat reduced, this reduction in benefits will be accompanied by a proportional reduction in contributions. In addition, final average salary is now defined as the highest average salary during a *three* year period as compared to a *five* year period under the 1959 Code. While the 1959 Code limited retirement benefits to 80% of final average salary, the 1974 Code allows benefits to equal the highest compensation during any twelve month period. Further, the 1974 Code provided optional benefit packages not available under the Code of 1959. Finally, the 1974 Code, when computing benefits, takes into account the higher, pre-1974 contribution rate and allows those higher contributions to increase benefits. 71 Pa.C.S. § 5702(a)(1). I thus believe that the advantages proffered by the 1974 Code are more than sufficient to offset the disadvantages in applying those changes to plaintiffs. This being so, there has been no impairment of any contract rights and plaintiffs' claim that applying these changes to them violates U.S.Const. Art. I, § 10, and Pa. Const. Art. I, § 17 must fail. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

Plaintiffs also argue that applying the 1974 Code to them violates Art. V, § 16(a) of the Pennsylvania Constitution, which provides:

> "Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth."

Because retirement benefits are deferred compensation, plaintiffs argue that reducing such benefits constitutes an impermissible reduction of compensation. I, however, do not believe that application of the 1974 Code to plaintiffs violates the aforementioned constitutional provision for the following reasons.

Although application of the 1974 Code will have the effect of reducing a judge's annual retirement benefits, this reduction is accompanied by other changes which are advanta-

geous to plaintiffs. I believe the analysis used for plaintiffs' impairment of contract claim is apt here. It must be remembered that total compensation has two components, i.e. present and deferred. While the deferred portion may be reduced, the decreased present contributions will give the judges an increase in presently spendable income. Further, Art. V, § 16(a) is intended to maintain the independence of the judiciary and protect that independence from encroachment from the other branches of the government. *Firing v. Kephart,* 466 Pa. 560, 353 A.2d 833 (1976). As the 1974 Code reduces pension benefits to both the legislature and the judiciary through a reduction in the class of service multiplier, I am unable to see how this can in any way encroach upon the independence of the judiciary. We thus find no violation of Art. V, § 16(a) of the Pennsylvania Constitution.

The 1972 freeze on "final average salary" presents one additional problem. While that component used in computing pension benefits was frozen in an attempt to enhance the actuarial soundness of the plan, the freeze, which obviously worked to the judges' detriment, was not accompanied by any offsetting benefits.[7] *Cf. Allen v. City of Long Beach, supra.* (A proposed change from fluctuating benefits based on present salaries to a fixed scale based on salaries at the time of retirement is unreasonable and thus invalid.) Therefore, the freeze could not have been applied to any members of the judiciary who were members of the retirement plan before the freeze went into effect. The only possible application of the freeze would relate to those

---

**7.** The judges' salaries were increased at the time "final average salary" was frozen. As previously stated, judicial compensation is divided into two parts: "present", which is the salary paid, and "deferred" which is represented by pension payments. When deciding if changes detrimental to the employee are offset by accompanying benefits, the benefits, if any, must be contained in the pension plan itself, thus precluding consideration of increases in salary as an offsetting benefit. *Cf. McKenna v. State Employees Retirement Board,* 495 Pa. 324, 433 A.2d 871, 876 (1981) ("When salary payments were periodically increased ..., benefits ... under the retirement system established by the Code of 1959 also were to increase accordingly.") (plurality opinion).

judges, represented by plaintiff Johnson, who joined the retirement plan when the freeze was in effect. Even there, however, I would hold the freeze is not applicable. In *Geary v. Retirement Board of Allegheny County,* 426 Pa. 254, 231 A.2d 743 (1967), we held that employees could take advantage of modifications enacted prior to vesting which are beneficial to the employee. Even using the reduced multipliers under the 1974 Code, those judges would receive higher retirement benefits where higher average salary was computed using the formula presented therein. *Cf. Baker v. Retirement Board of Allegheny County, supra* (even after pension rights have vested, modifications can become effective by *mutual* consent). I thus believe the 1972 freeze on "final average salary" is, in effect, a nullity.[8]

Plaintiffs Catania, Sweet and Beckert are in exactly the same situation as the judges in *McKenna v. State Employees Retirement Board,* 495 Pa. 324, 433 A.2d 871 (1981) insofar as their pensions have vested prior to the 1974 Code, thus making that law inapplicable to them. The right of plaintiffs Catania, Sweet, and Beckert to participate under the benefits package of the Code of 1959 is of course conditioned upon their willingness to pay into the retirement fund in accordance with the provisions of the Code of 1959. Throughout the history of our Commonwealth's retirement system, the benefits payable to a pensioner have been directly proportional to the contributions which the pensioner has made to the retirement system during active state service. Under the Code of 1959, a member of the judiciary is eligible for benefits on the basis of a "class of service multiplier" of 2.00 for the first ten years of service, and 1.50 for those years of service in excess of ten. The member is subject to the same multiplier of 2.00 and 1.50 for purposes of calculat-

8. The Act of March 1, 1974, P.L. 125, which established the Code of 1974, contains the following repeal of the final average salary freeze:
"In the case of any member terminating service on or after the effective date of this act any limitations on salaries as determined for retirement purposes pursuant to the Act of June 16, 1971 (P.L. 157, No. 8), are repealed retroactive to January 1, 1973."
Plaintiffs Catania, Sweet and Beckert completed ten years of judicial service after January 1, 1973.

ing contributions. When in 1974 the Legislature adopted its new retirement Code, and reduced the benefits multipliers by 25%, the contribution multipliers were reduced by an identical percentage. Under the Code of 1974 both the benefits multiplier and the contributions multiplier were reduced to 1.50 for the first ten years of service and to 1.125 for years of service in excess of ten. Thus it is obvious that plaintiffs would reap a substantial windfall directly affecting the integrity of the fund if they could elect to receive benefits under the Code of 1959 while contributing only at the rates prescribed under the Code of 1974.

The deleterious effect upon the retirement fund of such a windfall is illustrated by the following example of a judge who has worked 20 years at a salary of $40,000.[9] Under the Code of 1959, the class member would contribute to the system at a rate of 10% of gross earnings for each of the first ten years of service (2.00 multiplier $\times$ 1959 rate of contribution of 5%), and 7.5% of gross earnings for each of the remaining 10 years (1.5 multiplier $\times$ 1959 rate of 5%). Total contributions would be $70,000, calculated as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| 10% | x | $40,000 | x | 10 | - | $40,000 (first ten years) |
| 7.5% | x | $40,000 | x | 10 | - | 30,000 (remaining ten years) |
| | | | | | | $70,000 |

The annual benefits available under the Code of 1959 would be 4% of final average salary for each of the first ten years (2.0 $\times$ 1959 rate of 2%), and 3% for the remaining 10 (1.5 $\times$ 1959 rate of 2%), totalling $28,000:

| | | | | | | |
|---|---|---|---|---|---|---|
| 4% | x | $40,000 | x | 10 | - | $16,000 (first ten years) |
| 3% | x | $40,000 | x | 10 | - | 12,000 (remaining ten years) |
| | | | | | | $28,000 |

Annual benefits under the Code of 1959 for a judge retiring with twenty years of service would thus be 40% of total contributions, computed as follows:

$$\frac{\$28,000}{70,000} - - - 40\%$$

9. Although actual salary and the years of service for individual judges may vary, the figures chosen for the following examples are kept constant for the sake of simplicity.

Under the Code of 1974, the contributions would be 7.5% of gross earnings for the first ten years of service (1.5 multiplier $\times$ 1974 rate of 5%), and 5.625% for years of service in excess of ten (1.125 multiplier $\times$ 1974 rate of 5%). The total contribution, $52,500, is determined as follows:

```
7.5%   x   $40,000 x 10  -   $30,000 (first ten years)
5.625% x    40,000 x 10  -    22,500 (remaining ten years)
                             $52,500
```

The annual benefits available would be determined on the basis of 3% of final average salary for each of the first ten years worked, (1.5 $\times$ 2%), and 2.25% for each of the remaining ten (1.125 $\times$ 2%), or a total annual benefit of $21,000:

```
3%     x $40,000 x 10  -   $12,000 (first ten years)
2.25%  x  40,000 x 10  -     9,000 (remaining ten years)
                           $21,000
```

The annual benefits under the Code of 1959 for a judge retiring with twenty years of service under the Code of 1974 would again be 40% of total contributions:

$$\frac{\$21,000}{52,500} \text{ - - - } 40\%$$

Plaintiffs Catania, Sweet and Beckert, however, argue that they are entitled to the higher benefits under the 1959 Code even though they have contributed at the lower rates mandated by the 1974 Code. To continue with our previous examples, assume that a judge completed ten years of service immediately before the effective date of the 1974 Retirement Code. Thus, these employees' contributions would be:

```
10%    x $40,000 x 10 - $40,000 (first ten years at 1959
                                 contributions)
5.625% x  40,000 x 10 -  22,500 (second ten years at 1974
                                 contributions)
                        $62,500 Total contributions
```

As the employees ask that benefits be calculated entirely at the higher 1959 rates, those annual benefits, for a judge completing twenty years of service, would be $28,000. Annual benefits as a percentage of total contributions would now be:

$$\frac{\$28,000}{\$62,500} = 44.7\%$$

Instead of receiving annual benefits at the proportional rate of 40% of his total contributions, the judge would disproportionately receive annual benefits equal to 44.7% of his total contributions.[10] Because such disproportionate benefits would unjustly enrich plaintiffs at the expense of others who have properly contributed and received only proportionate benefits, a party entitled to, and who wishes to receive benefits pursuant to the Code of 1959, must also make the contributions required by that Code.

As plaintiffs Catania, Sweet and Beckert had served ten years before the effective date of the 1974 Retirement Code, their motion for summary judgment, insofar as consistent with this opinion, is granted.

The grant of summary judgment to the remaining plaintiffs, whose pensions were not vested by March 1, 1974, would require the concurrence of at least four justices. There not being at least four justices to grant summary judgment, summary judgment must be, and is, denied.

ROBERTS and HUTCHINSON, JJ., join in this opinion.

## OPINION IN SUPPORT OF THE GRANT OF SUMMARY JUDGMENT

NIX, Justice.

Although I concur in the result reached by Chief Justice O'Brien as to plaintiffs, Catania, Sweet and Becker, I disagree with the denial of the remaining plaintiffs' motion for summary judgment.

In *McKenna v. State Emp. Ret. Bd.*, 495 Pa. 324, 433 A.2d 871 (1981) the plurality opinion authored by Mr. Justice Roberts did not address the central question of whether the contractual right to retirement benefits may be unilaterally changed by the state as to terms or conditions on the basis of protecting "actuarial soundness."

10. Indeed the greater the number of years of contributions pursuant to the Code of 1974, the more disproportionate the benefits would be.

It was my position in *McKenna, supra,* that unilateral changes by the state in the terms and/or conditions of the retirement contract subsequent to the employment, where those changes inure to the detriment of the employee, violates the constitutional prohibition against the state's impairment of the obligation of contracts.[1] It is significant that in all of the decisions suggesting existence of a legislative reservation of authority to make unilateral changes for actuarial soundness, they were not situations where the retirement benefits contracted for by the public employee at the time of employment were thereby reduced or diminished.[2]

1. This Court has sustained unilateral changes in instances where the benefits to be received by the employee were not disturbed. *Retirement Board v. McGovern,* 316 Pa. 161, 174 A. 400 (1934) (length of service required, contributions needed and age requirements); *McBride v. Retirement Board of Allegheny County,* 330 Pa. 402, 199 A. 130 (1938) (improved administrative methods or technical changes in detail).

   In *Hickey v. Pitts. Pension Bd.,* 378 Pa. 300, 106 A.2d 233 (1954), this Court clearly indicated the legislature's right to insure actuarial soundness is limited by the prohibition against impairment of contracts, when we said:

   "The Legislature may strengthen the actuarial fibers but it cannot break the bonds of contractual obligations. The permissible changes, amendments and alterations provided for by the Legislature can apply only to conditions in the future, and never to the past. According to the cardinal principle of justice and fair dealings between government and man, as well as between man and man, the parties shall know prior to entering into a business relationship the conditions which shall govern that relationship. Ex post facto legislation is abhorred in criminal law because it stigmatizes with criminality an act entirely innocent when committed. The impairment of contractual obligations by the Legislature is equally abhorrent because such impairment changes the blueprint of a bridge construction when the spans are half way across the stream.
   378 Pa. 309–310, 106 A.2d at 237–238.

2. Here the reduction of retirement benefits does not avoid being an impairment because the increased available expendable income does not offset the diminuition of the deferred payment. The amendment unilaterally requires prospective retirees to contribute less towards their retirement benefits so as to facilitate a substantial reduction in the sovereign's obligatory contribution to those benefits.

Those who would deny summary judgment would have us depart from this Court's established restrictions on the "actuarial soundness" principle by partially overruling *Harvey v. Allegheny Co. Retirement Board,* 392 Pa. 421, 141 A.2d 197 (1958) and permit a reduction in retirement benefits by adopting a fluctuating benefits approach counter-balanced by corresponding advantages and disadvantages. That such an approach might violate the U.S. Constitution, Art. I, § 10, and Pa.Const., Art. I, § 17, does not appear to present a problem for those who would deny summary judgment. *United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (on which they rely) is not the constitutional safe-haven for state unilateral change of contracts as they suggest. Rather, it resuscitates the Contract Clause of the United States Constitution and articulates "... an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, *complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the state's self-interest is at stake."* (Emphasis supplied.) 431 U.S. at 25–26, 97 S.Ct. at 1519.

The Supreme Court also rejected the "total destruction test" for determining impairment (implicitly applied by those who would deny summary judgment here) stating: "The extent of impairment is certainly a relevant factor in determining its reasonableness. But we cannot sustain the [impairment] simply because the bondholders' rights were not totally destroyed." 431 U.S. at 27, 97 S.Ct. at 1520.

The state legislature knew there was a need for actuarial soundness long before these plaintiffs accepted the terms and conditions of their employment contract. And the reduction of benefits is not the only method by which the actuarial fibers of the retirement fund could be strengthened. Thus the reduction of benefits is neither reasonable nor necessary.

Accepting the principle that the state's duty to maintain the fiscal integrity of the retirement fund through actuarial soundness is a valid basis for *some changes in a retirement*

*system,* nevertheless, the state's unilateral reduction of retirement benefits arising from the employment contracts cannot pass constitutional muster and must fall.[3]

LARSEN, J., joins in this opinion.

## OPINION IN SUPPORT OF THE GRANTING OF SUMMARY JUDGMENT

LARSEN, Justice.

I join in Mr. Justice Nix's and Mr. Justice Flaherty's Opinions in Support of the Granting of Summary Judgment. Additionally, I reaffirm my position as set forth in my concurring opinion in *McKenna v. State Employees' Retirement Board,* 495 Pa. 324, 433 A.2d 871 (1981).

## OPINION IN SUPPORT OF THE GRANTING OF SUMMARY JUDGMENT

FLAHERTY, Justice.

This case concerns whether the Pennsylvania legislature has the power unilaterally to change the retirement contracts of judges prior to vesting of such contracts. I agree with Mr. Chief Justice O'Brien that summary judgment should be granted to plaintiffs whose pension rights were vested before the effective date of the 1974 Retirement Code.

I disagree, however, that there may be unilateral changes made in judicial retirement contracts *during the term* of office of a judge, whether for "actuarial reasons" or for any reasons not specified in the Pennsylvania Constitution. Pa. Const. art. V, § 16(a) provides:

**3.** For similar views, *see Wagoner v. Gainer,* W.Va., 279 S.E.2d 636 (1981); *Miles v. The Tennessee Consolidated Retirement System, et al.,* Tenn., 548 S.W.2d 299 (1976); *Sylvestri v. Minnesota,* 298 Minn. 142, 214 N.W.2d 658 (1973); *Campbell v. Michigan Judges Ret. Bd.,* 378 Mich. 169, 143 N.W.2d 755 (1966); *Bardens v. Board of Trustees of Judges Retirement System of Illinois,* 22 Ill.2d 56, 174 N.E.2d 168 (1961).

Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation *shall not be diminished during their terms of office,* unless by law applying generally to all salaried officers of the Commonwealth.

The "term of office" to be served by judges is established by Pa.Const. art. V, § 15(a), which provides: "The regular term of office of justices and judges shall be ten years...."

The plain effect of these two provisions is that although legislation may be *enacted* reducing the compensation, i.e., retirement benefits of judges, the reduction of benefits will not be applicable to any judge serving a term at the time of the enactment, although it may be applied to him if his retirement rights are not vested after his existing term ends, when, after re-election, a new term commences.*
Judges who are elected will not be subject to changes in retirement benefits, because they will have vested interests in the retirement fund by the end of their term of office (since the term of office is ten years and the interest in the fund vests in ten years), but an appointed judge who stands for election at the end of his appointed term may not have a vested retirement interest, and therefore, at the beginning of a new elected term, may be subject to retirement contract changes.

I disagree further with the opinion of Mr. Chief Justice O'Brien that what is tantamount to the "employment contract" of judges may be altered so as to reduce compensation of any judge so long as the purpose of the reduction is to make the retirement fund "actuarily sound". Article I,

---

* If the Constitution were interpreted as prohibiting any reduction in the compensation of judges at *any* time, such a construction would, in effect, render meaningless the language in Pa.Const. art. V, § 16(a), *supra* which limits the diminishment of compensation of judges "during their terms of office." In interpreting the Constitution, effect must be given, whenever possible, to all of its provisions. *Cavanaugh v. Davis,* 497 Pa. 350, 440 A.2d 1380 (1982). Had the drafters of the Constitution intended that compensation for judges could at no time be reduced, they would not have included the qualifying phrase "during their terms of office."

Section 17 of the Pennsylvania Constitution forbids the Commonwealth's acting so as to impair contracts. It does not provide that employment contracts may be impaired if the purpose is to make retirement funds "actuarily sound", as it were. An elected judge has an "employment contract" for ten years, and such a contract may not be unilaterally changed during the term of the contract. Such an alteration, if unilateral, would violate both Pa.Const. art. V, § 16(a) (the compensation of judges shall not be diminished during their terms of office) and art. I, § 17 (the Commonwealth shall not impair contracts).

In sum, I would hold that reductions in retirement benefits may not be made during a judge's term of office, but such reductions may be made when a term of office ends and a new term begins, if the judge's interest in the retirement fund has not vested.

I would, therefore, grant summary judgment as to all plaintiffs.

LARSEN, J., joins.

## MEMORANDUM

McDERMOTT, Justice.

Before coming to this Court, I joined those now seeking review in these proceedings. Therefore, I have recused myself. It is my opinion that Mr. Justice Hutchinson should do likewise. Prescinding from the question of ultimate integrity and addressing only the issue of appearance, Mr. Justice Hutchinson has in this particular case an extra weight on that scale. Not only is he a member of the class directly affected, but while a member of the General Assembly, he voted for the statute in question. I do not believe necessity requires that the litigants in this case should be obliged to appeal to one whose vote created the legislation they contest.