Henry J. Cianfrani, Petitioner *v.* Commonwealth of Pennsylvania, State Employees' Retirement Board, Respondent.

Argued June 5, 1980, before Judges WILKINSON, JR., BLATT and WILLIAMS, JR., sitting as a panel of three.

*Charles M. Golden,* with him *Sharlyn B. Cohen,* for petitioner.

*Susan J. Forney,* Deputy Attorney General, with her *Allen C. Warshaw,* Chief, Civil Litigation, and *Harvey Bartle, III,* Acting Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., July 24, 1980:

Petitioner has brought in the Commonwealth Court's original jurisdiction a complaint containing a count for declaratory judgment and a count for a writ of mandamus. Petitioner contends that Section 5953 of the State Employees' Retirement Code (Code), 71 Pa. C. S. §5953, constitutes an unconstitutional impairment of petitioner's contractual rights and permits the taking and confiscation of property by the Commonwealth without due process of law. Presently before the Court is petitioner's motion for summary judgment under Pa. R.C.P. No. 1035.[1]

Petitioner was elected to the Senate of the Commonwealth in 1966 and held that elective office until his resignation on December 15, 1977. After his resignation petitioner furnished the respondent State Employees' Retirement Board (Board) with all of the necessary documentation to complete his application

---

[1] Pa. R.A.P. 106 provides that the Pennsylvania Rules of Civil Procedure are applicable to cases brought within this Court's original jurisdiction.

for retirement benefits under the Code. Subsequently the Board determined that petitioner was entitled to monthly retirement benefits of $920.00 for life, plus certain medical insurance benefits, and petitioner began receiving monthly checks in that amount from the Board.

On September 23, 1977, a Grand Jury sitting in the Eastern District of Pennsylvania returned a Bill of Indictment against petitioner, charging him with various federal crimes. On December 30, 1977 petitioner entered pleas of guilty to one count of racketeering, 101 counts of mail fraud, and four counts of obstruction of justice, and entered pleas of nolo contendere to four counts of income tax evasion.

On June 26, 1978 the Senate of the Commonwealth, by resolution, acknowledged the findings of its Committee on Ethics and Official Conduct that a sum of $30,232.80 in Senate funds had been improperly paid, based on petitioner's admitted retention of "ghost" employees at Senate expense. The resolution authorized the President of the Senate to immediately take all steps necessary to recover the sum from petitioner. As a result of the resolution and pursuant to Section 5953 of the Code, the President of the Senate requested that the Secretary of the Board assign to the Senate the retirement payments otherwise due petitioner until the sum of $30,232.80 was paid to the Senate. By letter dated July 26, 1978, the Secretary of the Board notified petitioner that the annuity payments were suspended in order to satisfy the obligation alleged to be due the Commonwealth.

Before October 7, 1975 Section 5953 of the Code provided in pertinent part:

(a) The right of a person to any benefit or right accrued or accruing under the provisions of this part and the moneys in the fund are hereby exempt from any State or municipal

tax, levy and sale, garnishment, attachment, spouse's election, or any other process whatsoever, and shall be unassignable except:

(1) To the Commonwealth in the case of a member who is terminating State service and has been determined to be obligated to the Commonwealth for the repayment of money.

. . . .

(b) The board shall be authorized to pay from the fund:

(1) In the case of a member who is terminating service, the amount determined after certification by the head of the department that the member is so obligated, and after review and approval by the department or agency's legal representative *and* upon receipt of an assignment from the member in the amount so certified. (Emphasis added.)

Section 5953 was amended[2] on October 7, 1975 to provide:

(a) The right of a person to any benefit or right accrued or accruing under the provisions of this part and the moneys in the fund are hereby exempt from any State or municipal tax, levy and sale, garnishment, attachment, spouse's election, or any other process whatsoever *except for a set-off by the Commonwealth in the case provided in paragraph (1)*, and shall be unassignable except:

(1) To the Commonwealth in the case of a member who is terminating State service and

---

[2] The amendment was passed by the State Senate on April 29, 1975, with petitioner voting in the 42-4 majority. Since the point has not been raised, briefed or argued, we do not decide whether petitioner's affirmative vote for this legislation is an assent to its application to. him.

has been determined to be obligated to the Commonwealth for the repayment of money owed on account of his employment. . . .

. . . .

(b) The board shall be authorized to pay from the fund:

(1) In the case of a member who is terminating service, the amount determined after certification by the head of the department that the member is so obligated, and after review and approval by the department or agency's legal representative *or* upon receipt of an assignment from the member in the amount so certified. (Emphasis added.)

In *Harvey v. Allegheny County Retirement Board,* 392 Pa. 421, 431-32, 141 A.2d 197, 203 (1958), the Pennsylvania Supreme Court succinctly set forth the law with regard to public employees with vested rights in a retirement system:

1. An employe who has complied with all conditions necessary to receive a retirement allowance cannot be affected adversely by subsequent legislation which changes the terms of the retirement contract.

2. An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

3. An employe who has not attained eligibility to receive a retirement allowance may not be subject to legislation which changes the terms of the retirement contract if the change does not reasonably enhance the actuarial soundness of the retirement fund.

In the instant case it appears that as of October 7, 1975 petitioner had not attained eligibility to receive a retirement allowance. When Section 5953 of the Code was amended in 1975, petitioner had spent less than ten years in the retirement system.

Since petitioner apparently does not fall within the first category described in *Harvey,* then in order to decide whether the October 7, 1975 amendment to Section 5953 of the Code was effective with respect to petitioner's rights under the retirement system this Court must determine whether that amendment to Section 5953 is a "reasonable enhancement of the actuarial soundness of the retirement fund." After examination of the amendment's salutary effects on the treasury of the Commonwealth, we conclude that the 1975 amendment is an enhancement and that petitioner is subject to it. *See Harvey, supra,* where the Pennsylvania Supreme Court ruled that increasing the retirement age was related to maintaining the actuarial soundness of a pension fund and that a statute doing so did apply to all employees who, on the effective date of the act, had not attained eligibility to receive a retirement allowance; *Pennsylvania Association of State Mental Hospital Physicians, Inc. v. State Employees' Retirement Board,* 25 Pa. Commonwealth Ct. 632, 639 n. 4, 361 A.2d 449, 453 n. 4 (1976), *aff'd* 484 Pa. 313, 399 A.2d 93 (1979), where this Court noted that "prima facie and almost to the point of judicial notice" a statute altering retirement credit calculations for part-time employees appeared to add to the soundness of the retirement system.

Petitioner next argues that Section 5953 of the Code is unconstitutional in that it permits confiscation of property by the Commonwealth without due process of law. The retirement system creates a contract between the Commonwealth and its employees. *Bowers v. State Employes' Retirement Board,* 29 Pa.

Commonwealth Ct. 561, 371 A.2d 1040 (1977). Once the employee has satisfied the terms, conditions and requirements of the retirement system, he is entitled to receive the retirement benefits. *Harvey, supra.* Because the interest of an individual in continued receipt of these benefits is a statutorily created "property" interest, petitioner here contends that due process required a hearing before any setoff was instituted.[3]

We first examine the essence and working of Section 5953. It permits the Commonwealth to set off certain debts of its employees against retirement benefits "accrued or accruing". This remedy is the same that has long existed for persons who are mutually debtors and creditors of each other; such individuals may withhold the money which they owe in satisfaction of the other person's debts. The Section 5953 setoff takes after 1) the Commonwealth has determined the terminating employee to be obligated to the Commonwealth for the repayment of money owed on account of his employment, 2) the employee's department head has certified the obligation, and 3) the department's legal representative has reviewed and approved the obligation and the amount owed.

In support of his position petitioner has offered cases ruling that pretermination hearings are required in the instances of welfare benefits, *Goldberg v. Kelly,* 397 U.S. 254 (1970); garnishment of wages, *North Georgia Finishing, Inc. v. Di-Chem, Inc.,* 419 U.S. 601 (1975); repossession remedies, *Mitchell v. W. T. Grant Co.,* 416 U.S. 600 (1974); and probation and parole, *Morrissey v. Brewer,* 408 U.S. 471 (1972).

---

[3] Petitioner has also argued that before any setoff was initiated he should have been afforded a hearing pursuant to Section 504 of the Administrative Agency Law, 2 Pa. C. S. §504. We reject this argument because we do not consider the Section 5953 setoff an "adjudication" as that term is defined in Section 101 of the Administrative Agency Law, 2 Pa. C. S. §101.

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), wherein it was held that an evidentiary hearing is not required prior to the termination of Social Security disability payments, the Supreme Court identified three factors to be assessed in considering the dictates of due process: the private interest that will be affected by the official action; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

After assessing the private and governmental interests at stake in the instant case and the nature of the existing procedures, we conclude that the procedure afforded was constitutionally adequate.

We find that the public interests weigh heavily in favor of the existing procedures. The 1975 amendment to Section 5953 assists in maintaining the retirement system's finances with a minimum of expenditures for litigation. "[T]he [Commonwealth's] interest, and hence that of the public, in conserving scarce fiscal and administrative resources is a factor that must be weighed." *Mathews, supra* at 348. Further, there is the public interest in effectively remedying a government official's use of public employment for criminal purposes. We therefore conclude that Section 5953's existing procedures comport with due process.

Finally, petitioner argues that the Board incorrectly applied Section 5953 of the Code to him. In this regard petitioner contends that Section 5953 provides for the setoff only in the case of an employee "who is terminating State service." Since he terminated his employment in December 1977 and the Board shortly thereafter computed and began paying his retirement

benefits, petitioner argues, the Board's action of instituting a setoff was invalid. We read the section as permitting the Board to exercise the setoff from the time an employee terminates his service.

The above disposition of petitioner's arguments requires us to deny petitioner's motion for summary judgment. Instead, since "[i]t would be irrational to deny judgment . . . to the party rightly entitled thereto simply because he happened not to be the party who made the motion for judgment," *Boron v. Smith,* 380 Pa. 98, 102, 110 A.2d 169, 171 (1955), we will enter judgment for the Board. *Allegheny County Port Authority v. Flaherty,* 6 Pa. Commonwealth Ct. 135, 293 A.2d 152 (1972).

Accordingly, we will enter the following

### ORDER

AND Now, July 24, 1980, petitioner's motion for summary judgment is denied. Judgment is here entered in favor of respondent State Employees' Retirement Board and against petitioner Henry J. Cianfrani.

Judge WILLIAMS, JR. dissents.