Francis J. Catania et al., Plaintiffs *v.* Commonwealth of Pennsylvania, State Employees' Retirement Board et al., Defendants.

394

Argued December 14, 1982, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three. President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR. and DOYLE did not participate.

*Henry T. Reath,* with him *Alexis J. Anderson* and *Robert E. Kelly, Jr., Duane, Morris & Heckscher,* for plaintiffs.

*Mary Ellen Krober,* Deputy Attorney General, with her *Allen C. Warshaw,* Deputy Attorney General, Chief of Special Litigation, and *LeRoy S. Zimmerman,* Attorney General, for defendants.

*Sidney L. Krawitz,* with him *Joseph F. Kameen, Krawitz & Ridley, P.C.,* for Amicus Curiae, Pennsylvania Bar Association.

OPINION BY JUDGE CRAIG, January 27, 1983:

## The Record

The matter now before this court[*] began with a complaint, with counts in mandamus and for declaratory judgment, which eight judges of courts of common pleas of various counties filed originally in this court against the State Employees' Retirement Board, its secretary and the Treasurer of the Commonwealth. After the pleadings closed, with no dispute of fact involved, the plaintiffs presented a motion for summary judgment, asking that we order the recalculation of the retirement pension benefits of the plaintiffs, and others similarly situated, under the State Employes' Retirement Code of 1959[1] without reference to certain modifications effective June 22, 1972 and March 1, 1974, as discussed below.

The Pennsylvania Supreme Court then accepted plenary jurisdiction of the case. After argument, the Supreme Court granted the requested summary judgment in favor of those three of the plaintiffs[2] who had

---

[*] Duly scheduled before the court en banc; heard and decided by Judges BLATT, CRAIG and MACPHAIL following a decision by the other members of the court not to participate.

[1] Act of June 1, 1959, P.L. 392, *as amended, formerly* 71 P.S. §§1725-101—1725-809, repealed by the Act of March 1, 1974, P.L. 125, §2(a).

[2] Francis J. Catania, Charles W. Sweet, and Paul R. Beckert.

completed ten years of judicial service before March 1, 1974, but after June 22, 1972. *Catania v. State Employees' Retirement Board,* Pa. , 450 A.2d 1342 (1982). Being divided with respect to the issues raised by the remaining plaintiffs, the Supreme Court has returned the case for our consideration as to those five plaintiffs, four of whom[3] began their judicial service before June 22, 1972 and completed ten years of service after March 1, 1974, while the remaining plaintiff[4] commenced his judicial service between the two stated dates and accordingly will also complete ten years of service after the 1974 date.

The provisions of the 1959 Code for the calculation of judges' pension benefits and contributions, and mathematical illustrations of the effects of the 1972 and 1974 modifications, have appeared in *McKenna v. State Employees' Retirement Board,* 495 Pa. 324, 433 A.2d 871 (1981) (all of the justices concurring in the result) consistently with the presentation of the same in the opinion of the Chief Justice in this case. In short, the 1959 benefits formula, before those modifications, was

Benefits =

Final Average Salary x 10 years x .04

Plus

Final Average Salary x years beyond 10 x .03

As to judges' contributions to the pension fund, the 1959 Code generally required 10% of salary to be contributed during the first ten years and 7.5% in each year thereafter.

The Commonwealth Compensation Commission, in its report of June 22, 1972, while recommending salary increases for members of the executive, judicial and

---

[3] Edward J. Bradley, John W. Sawyer, Edmund V. Ludwig, and Joseph F. O'Kicki.

[4] Livingstone M. Johnson.

legislative branches, froze the "Final Average Salary" compensation for pension purposes at $30,000, a figure below the actual salary level recommended.

Although the legislature, by Concurrent Resolution No. 1, of August 15, 1972, permitted the final average salary freeze to remain, thereafter the new State Employees' Retirement Code of 1974, 71 Pa. C. S. §§5101-5956, eliminated the final average salary freeze but established a reduction of 25% in the multipliers for the benefits formula. The multiplier of .04 for the first ten years of service was reduced to .03, and the multiplier of .03 for years beyond ten was reduced to .025. The same 1974 Code also reduced the required contributions by 25%, from 10% to 7.5% of salary for the first ten years, and from 7.5% to 5.625% for years beyond ten.

As illustrated by calculations submitted by affidavit on behalf of the defendant board in this case, as applied to the typical case of the Honorable EDMUND V. LUDWIG, one of the four-judge group noted above, the effect of the 1974 change is as follows:

Annual full retirement annuity (age 60)

1959 Code $30,318.81
1974 Code $22,739.10

Adjusted for early retirement, the respective figures become (1959) $22,739.11 and (1974) $17,054.33.

Calculations from an affidavit submitted on behalf of the plaintiffs proceed from that point to apply a Cost of Life Annuity factor to arrive at a Present Value of Account of $478,632 under the 1959 Code alone and $358,974 under the 1959 Code as modified by the 1974 Code, for a total difference of $119,658. The same affidavit calculates the difference in contribution totals ($72,500 and $58,125, respectively) to be $14, 375, thus presenting a net dollar detriment of $105,283.

We consider other impacts of the 1974 Code, both quantifiable and unquantifiable, below. The 1974 Code also repealed the 1972 freeze, retroactively to January 1, 1973.

In focusing upon the precise questions which remain in this case, it is apparent that the Supreme Court, despite dividing in other respects in *Catania,* unanimously agreed that the 1972 freeze cannot lawfully be applied to any who were members of the retirement plan before the freeze's effective date (four of the five judges now involved here), nor even to the one plaintiff who joined the retirement plan after that date because, even in the view of those justices who would refuse summary judgment in favor of those judges in other respects, the freeze clearly was wholly detrimental. The fact or prospect of salary increases was of no moment, according to the opinion of former Chief Justice O'BRIEN, because "[w]hen deciding if changes detrimental to the employee are offset by accompanying benefits, the benefits, if any, must be contained in the pension plan itself, thus precluding consideration of increases in salary as an offsetting benefit." *Catania,*      Pa. at    , 450 A.2d at 1351, n. 7.

Of course, we cannot disagree with the indicated unanimous view of the Supreme Court, that any effect of the 1972 freeze must be excluded from the pension calculations of the plaintiffs. Therefore, the issues of the 1974 Code changes become our sole concern.

## The Questions

A broad statement of the issue now before us is as follows:

With respect to judges who, by assuming office, became members of the retirement plan before the date of a statutory amendment decreasing the dollar amount of benefits and the dollar amount of contribu-

tions, as well as making other changes, do the constitutional provisions prohibiting legislative impairment of contracts and prohibiting the diminution of judges' compensation during their terms of office, unless applied generally to all salaried officers of the Commonwealth, bar the application of those legislative changes to the calculation of pension benefits?

The pertinent line of judicial decisions is by now familiar. We now must inquire whether the distinction (expressed in some of the precedents) between pension rights acquired upon joining the pension fund, in comparison with those attained upon completion of the prescribed minimum years of service, is a distinction having any real difference in substance.

### The Background of Judicial Decisions

As the lexicon to follow in our consideration, we necessarily must note that the term "vesting" has traditionally been used when the employee, having made all required contributions, has completed the minimum number of years of service required for eligibility. *Hickey v. Pittsburgh Pension Board,* 378 Pa. 300, 106 A.2d 233 (1954). That terminology is in accordance with the Code of 1959; section 102(23.1) of that Code, added by the Act of July 31, 1968, P.L. 695, provided that "vesting" shall mean "the right of a member who separates from service after having completed ten (10) or more years of credited service to leave accumulated deductions . . . credited to his account" entitling him to receive a retirement allowance "upon reaching superannuation retirement age."

We have reviewed all of the major decisions which have considered whether or not statutory changes in pension plan terms can be constitutionally applied to pension plan members, both before such vesting by years of service and after the required number of years have expired; a footnote lists the citations of

these cases in alphabetical order.[5] To present that survey in a compact form, we have tabulated those cases, listing the nature of the statutory changes in condensed form down the left-hand column and classifying the decisions, according to their facts, as to whether the pension contract rights of the respective plaintiffs had become, in the terminology noted above, "vested." We have noted the salient instances in which, beginning with *Harvey* and *Schmidt* in 1958, the Supreme Court stressed the actuarial soundness purpose as a basis for allowing statutory pension changes to have effect before "vesting."

The tabulation follows:

---

[5] *Baker v. Retirement Board of Allegheny County*, 374 Pa. 165, 97 A.2d 231 (1953) ;

*Burello v. State Employes' Retirement System*, 49 Pa. Commonwealth Ct. 364, 411 A.2d 852 (1980) ;

*Cianfrani v. State Employes' Retirement Board*, 57 Pa. Commonwealth Ct. 135, 417 A.2d 279 (1980), *on reh.* 57 Pa. Commonwealth Ct. 143, 426 A.2d 1260 (1981) ;

*Eisenberger v. Harrisburg Police Pension Commission*, 400 Pa. 418, 162 A.2d 347 (1960) ;

*Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 231 A.2d 743 (1967) ;

*Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958) ;

*Hickey v. Pittsburgh Pension Board*, 378 Pa. 300, 106 A.2d 233 (1954) ;

*Kane v. Policemen's Relief & Pension Fund of Pittsburgh*, 336 Pa. 540, 9 A.2d 739 (1939) ;

*Mauch v. Allegheny County Retirement Board*, 381 Pa. 492, 113 A.2d 230 (1955) ;

*McBride v. Allegheny County Retirement Board*, 330 Pa. 402, 199 A. 130 (1938) ;

*McKenna v. State Employees' Retirement Board*, 495 Pa. 324, 433 A.2d 871 (1981) ;

*Schmidt v. Allegheny County Retirement Board*, 394 Pa. 105, 145 A.2d 692 (1958) ;

*Wright v. Allegheny County Retirement Board*, 390 Pa. 75, 134 A.2d 231 (1957).

## TABULATION—PENSION DECISIONS

| STATUTORY CHANGE— EFFECTIVENESS AT ISSUE | CHANGE *BEFORE* VESTING BY SERVICE YEARS —EFFECT ON PENSION CONTRACT | | CHANGE *AFTER* VESTING BY SERVICE YEARS —EFFECT ON PENSION CONTRACT | |
|---|---|---|---|---|
| 1. Suspension of pension during further public employment | | | CHANGE BARRED: *McBride* *Kane* *Hickey* | 1938 1939 1954 |
| 2. Prohibition against drawing multiple public pensions | CHANGE BARRED: *Baker* | 1953 | CHANGE BARRED: *Mauch* | 1955 |
| EFFECTIVE: *Schmidt* 1958— Change enacted before employment was resumed (Not "actuarial soundness") | | | | |
| 3. Time limit as to repayment of withdrawn contributions for new benefit | | | EFFECTIVE: *Wright* | 1957 |
| 4. Increase of contributions rate and minimum age required | EFFECTIVE: *Harvey* 1958 Involved "actuarial soundness" | | | |
| 5. Increase of service years required; establishment of minimum age | EFFECTIVE: *Eisenberger* 1960 Involved "actuarial soundness" | | | |
| 6. Reduction of age requirement | EFFECTIVE: *Geary* 1967 Reduced "actuarial soundness" | | | |
| 7. Forfeiture upon conviction | | | CHANGE BARRED: *Burello* *Cianfrani* | 1980 1981 |
| 8. Reduction of benefits and contribution rate | | | CHANGE BARRED: *McKenna* | 1981 |

From that survey, we note in the right-hand column one series of results (as distinguished from decisional theories) concerning which no disagreement appears: Where a member's rights have been treated as "vested" by reason of attaining the minimum years of tenure, any and all changes which would reduce the benefits then applicable have been barred. Only the *Wright* decision permitted an amendment to have effect after "vesting," but that amendment involved a new deadline before which an employee who had withdrawn any contributions was required to repay them in order to qualify for a newly-granted increment of 5% of the annual retirement allowance for each service year beyond twenty. Because compliance with the deadline was a condition precedent to obtaining the new benefit, the Supreme Court majority did not regard that new provision as having the effect of a condition subsequent modifying benefits already in effect.

The difficulty, of course, remains with respect to pension fund members like the plaintiffs in this case, who had commenced employment but not attained minimum tenure before the enactment of the legislative change.

Certain Pennsylvania Supreme Court decisions concerning these issues, before 1958, articulated rather strongly the concept that contractual rights accrue upon employment, at the first day of membership in the system. In *Baker,* on which the plaintiffs here place considerable reliance, the Supreme Court held that a legislative prohibition against receiving more than one public pension could not constitutionally be applied to a member who had not yet reached the minimum tenure for vesting. The opinion of Mr. Justice Musmanno was unequivocal in stating:

As of the time he joined the fund, his right to continued membership therein, under the same

rules and regulations existing at the time of his employment, was complete and vested. The legislature could not thereafter constitutionally alter the provisions of his already existing contract of membership. His right in the fund could only be changed by mutual consent. . . .

Once Baker had entered into the County Retirement system, and had made his first payment, his rights were just as much vested as they were at the termination of his employment.

*Baker,* 374 Pa. at 169, 171, 97 A.2d at 233-34.

*Wright,* noted above, followed the 1953 *Baker* case in 1957; although the "vested" status of the employee in *Wright* could cause statements about earlier status to be regarded as dictum, we note that the opinion of Mr. Justice COHEN, citing *Baker,* announced:

We have said, and now reaffirm, that a public employe has a contract right to continued membership in a retirement fund, under the same rules and regulations prevailing at the time of his employment, which may not be qualified or altered by subsequent legislative enactment.

*Wright,* 390 Pa. at 79, 134 A.2d at 233.

Sensitive to possible inconsistency, the *Wright* opinion regarded certain language in *Hickey,* holding that rights become vested upon completion of twenty years of service, as less exact than the *Baker* language quoted earlier in the *Hickey* opinion; of course, *Hickey,* unlike *Baker,* involved in fact the situation of an employee who had passed the point of minimum tenure for pension eligibility.

Shortly thereafter came *Harvey,* which permitted a legislative increase of both contributions rate and minimum service tenure to be effective on the basis that such changes involved enhancement of the "ac-

tuarial soundness'' of the pension fund. Using terms applicable to the employee in that case, who had not achieved minimum tenure, *Harvey* stated:

> An employe who has not attained eligibility to receive a retirement allowance may be subject to legislation which changes the terms of the retirement contract if the change is a reasonable enhancement of the actuarial soundness of the retirement fund.

*Harvey*, 392 Pa. at 431-2, 141 A.2d at 203. Importantly, the same passage in *Harvey* also stated the converse of that proposition—an employee who has not attained eligibility is nevertheless not subject to amendments which do not reasonably enhance the actuarial soundness of the fund. Thus *Harvey* established restrictions on the "actuarial soundness" basis for legislative change, by expressly and definitively recognizing that changes for actuarial soundness are nevertheless to be rejected if they are not reasonable. Also, for present purposes, we must note that *Harvey,* although it involved very real changes, did not involve a change like the change in this case, a reduction of benefits along with a reduction of contributions by an amount not necessarily equal in value.

Next we have *Eisenberger,* involving an amendment which increased the minimum years of tenure and established a minimum age, sought to be applied to a member who had entered public employment three months earlier. Holding that actuarial soundness was involved in that sort of change, Mr. Justice COHEN's opinion expressly follows "the rule established in Harvey . . . [as] the rule which we now apply,'' but without any express consideration of whether or not such enhancement was reasonable. *Eisenberger,* 400 Pa. at 422, 162 A.2d at 348-49.

*Geary,* in 1967, presented a change which had little parallel to the one we now confront. In that case, the minimum age requirement was reduced; thus the amendment was one which could be viewed as advantageous to an individual pension applicant but also could be recognized as reducing the actuarial soundness of the fund.

Where a judicial system can draw upon nearly a half century of experience with pension questions like those now before us, we are aided in reading the constitutional provisions prohibiting legislative impairment of contracts, U.S. Const., art. I, §10, Pa. Const. art. I, §17, or upon the judicial compensation clause in Pa. Const. art. V, §16(a). The essence of judicial consistency and continuity, and therefore the avoidance of the creation of policy by the judiciary, is in holding close to the experience of previous decisions and their principles, with recognition that the facts of the present case may differ.

### The Impairment of Contracts Clause

The circumstances closest to the present case are those in *Baker* and *Harvey,* but those cases did not involve the kind of change presented here. Moreover, in *Baker,* the prohibition against drawing multiple public pensions could be regarded as a policy not intended for the actuarial enhancement of either pension fund.

Granting that any legislative demand has the effect of enlarging a pension fund contributes to its actuarial strength, as in the case of the contributions increase in *Harvey* or the benefits decrease here, we are drawn back to the rule of reason which continues to echo from *Harvey* in both of the respective opinions in *Catania* which deal with contract impairment. The opinion of Chief Justice O'BRIEN states that not only public employees who have become eligible for retirement al-

lowance but also *"those who are in the process of becoming eligible possess certain vested and contractual rights with which the legislature may not constitutionally interfere,"* (emphasis in original) citing *Geary* and *Kane.*[6] In a vein not greatly dissimilar, the opinion of Mr. Justice Nix states "that unilateral changes by the state in the terms and/or conditions of the retirement contract subsequent to the employment, *where those changes inure to the detriment of the employee,* violates the constitutional prohibition against the state's impairment of the obligation of contracts.'"[7] (Emphasis supplied.)

To say, as was said in *Harvey,* that steps for pension fund conservation will not be allowed, even before "vesting," if they bear unreasonably upon the pension fund member who is a party to the contract, is a proposition not substantially different from concluding that pre-vesting changes which subject the employee to a net detriment are constitutionally unacceptable.

To apply such a test is not easy. As noted above, any reduction of the benefit amounts for which a pension fund will hereafter be obligated necessarily enhances the actuarial strength of the fund; on the other hand, also inescapable is the point that an improvement in the financial soundness of the pension fund benefits all of its members in a broad but important sense, whether they are as yet remote from the point of collecting benefits or are among those currently receiving benefits and therefore concerned that such benefits continue.

Counsel have brought to our attention all of the other aspects of the 1974 Code to be considered, in addition to the dollar decrease of benefits and contribu-

---

[6] *Catania,*     Pa. at     , 450 A.2d at 1349.

[7] *Id.* at     , 450 A.2d at 1353.

tions described above. At retirement, the 1974 Code provides for the new Option 4, permitting employees to withdraw, in a lump sum, all the contributions made into the fund and the interest accrued on the contributions. 71 Pa. C. S. §5705(a)(4)(iii). It reduced from twenty to ten the minimum number of years in office before a judge could voluntarily retire, and expanded the circumstances under which all members could obtain credit for military service.

Final average salary is now defined as the highest average salary during a three-year period, as compared to a five-year period under the 1959 Code. While the 1959 Code limited retirement benefits to 80% of final average salary, the 1974 Code allows benefits to equal the highest compensation during any twelve-month period. Further, the 1974 Code provided optional benefit packages not available under the Code of 1959. Finally, the 1974 Code, when computing benefits, takes into account the higher, pre-1974 contribution rate and allows those higher contributions to increase benefits. 71 Pa. C. S. §5702(a)(1).

Finally, however, we have the benefit of an affidavit of the Assistant Secretary of the State Employees Retirement System, submitted on behalf of the defendant board. To the extent that the board, in that affidavit, has been able to quantify the effect of the complex of changes described above, that quantification has been well and succinctly set forth in Example 1A, Benefit Calculation of the Honorable EDMUND V. LUDWIG, whose situation both sides have selected as a typical case. We reproduce Example 1A below, but we note that, although both columns are labeled as being "Under The 1959 Code Multipliers," that is true only for the column on the left; the column on the right obviously states results "Under The *1974* Code Multipliers."

408

## EXAMPLE 1A
### BENEFIT CALCULATION OF THE HONORABLE EDMUND V. LUDWIG

|  | Under The 1959 Code Multipliers | Under The 1959 Code Multipliers |
|---|---|---|
| **Standard Benefit Calculation:** | | |
| $55,000 X 2% X 10.000 = $11,000.00 | X 2.0 = $22,000.00 | X 1.5 = $16,500.00 |
| $55,000 X 2% X 5.0417 = $5,545.87 | X 1.5 = $8,318.81 | X 1.125 = $6,239.10 |
| Annual Full Retirement Annuity (age 60): | $30,318.81 | $22,739.10 |
| Contributions and Interest as of 12/31/83 | $101,197.32 | $87,118.66 |
| *Calculations to Adjust for Early Retirement:* | | |
| Annual Full Retirement Annuity (age 60) (calculated above) | $30,318.81 | $22,739.10 |
| X Early Retirement Reduction Factor | 75.0% | 75.0% |
| Adjusted Annual Full Retirement Annuity (adjusted for Early Retirement) | $22,739.11 | $17,054.33 |
| *Calculations to Adjust for Option 4:* | | |
| Option 4 Lump Sum Withdrawal at Retirement | Not Applicable | $87,118.66 |
| Adjusted Annual Full Retirement Annuity (adjusted for Early Retirement and Option 4) | Not applicable | $10,808.55 |
| *Total Annuity Calculations:* | | |
| Adjusted Annual Full Retirement Annuity (calculated above) | | $10,808.55 |
| X Cost of Life Annuity Factor | 13.9484 | 13.9484 |
| Present Value of Account (as of 12/31/83): | $317,174.20 | $150,761.96* |

---

* Adjusted Present Value (After Option 4 Withdrawal)

Full study of the foregoing example leads unavoidably to the conclusion that the changes effected by the 1974 Code, regardless of the options elected, constitute a net detriment to the employee, even when the aforementioned reduction of contributions and other revisions are also taken into consideration. We conclude that the result is a constitutionally impermissible impairment of the contract into which an employee has entered by becoming a member of the fund upon employment. Although the employee must expect the governmental fund to function as a trustworthy fiduciary, with respect to the investment and management of the fund as well as with respect to revision of its terms, the unilateral effectuation of the changes well summarized in the foregoing example cannot reasonably be regarded as within the expectation of the employee as contracting party.

### Judicial Compensation Clause

In considering further the issue of the judicial compensation clause, that important provision of the constitution essential to protect the independence of the judicial branch, *Firing v. Kephart,* 466 Pa. 560, 568, 353 A.2d 833, 837 (1970), we necessarily must begin by noting the language of the clause. It reads:

Justices, judges and justices of the peace shall be compensated by the Commonwealth as provided by law. Their compensation shall not be diminished during their terms of office, unless by law applying generally to all salaried officers of the Commonwealth.

Pa. Const. art. V, §16(a). The standard thus expressed is, in one sense, more measurable than the rule of reason which our Supreme Court has expressed under the contract impairment clause. When we consider whether or not the compensation of a member of the judiciary has been diminished under the compen-

sation clause, we necessarily must give our primary attention to those factors which are quantifiable in dollars because it is in dollars that compensation, including pension benefits, is paid or credited and is to be measured.

As the foregoing Example 1A affirms, the effect of the 1974 Code is a measurable reduction in compensation.

Of course, the express exception in the constitutional clause exempts from its condemnation any compensation diminution which by law applies "generally to all salaried officers of the Commonwealth." Thus the test indeed is whether or not the General Assembly has "singled out the judiciary for either a direct or an indirect reduction in compensation." *Kremer v. Barbieri,* 48 Pa. Commonwealth Ct. 557, 568, 411 A.2d 558, 563, *aff'd* 490 Pa. 444, 417 A.2d 121 (1980). Although the 1979 Code reduced multipliers for the legislature, as well as for the judiciary, 71 Pa. C. S. §5102, there was no comparable reduction with respect to members of the executive branch. We cannot be persuaded by the argument of the defendant board that we should ignore that point on the ground that executive branch pension computations were never enhanced by class-of-service multipliers. That contention places form over substance and means over results; the constitutional provision does not confine itself to diminution of compensation by like means. As pointed out by the evidence before us, there was a diminution of compensation with respect to the plaintiff judges. The defendant board directs our attention to no diminution of executive branch compensation by any means.

We therefore conclude that, with respect to these plaintiffs and others similarly situated, the questioned 1974 changes are constitutionally barred from being operative. Because all of the plaintiffs are in the course of elective terms, there is no need to determine

whether the concept of "terms of office" in article V, §16(a) embraces for this purpose any term other than the ten-year elective terms involved in this case.

## Contributions

We conclude by recognizing, without here deciding, the important issue which necessarily remains— whether a party entitled to receive benefits under the 1959 Code must also make the contributions required by that Code, at a higher level than the reduced contributions requirement of the 1974 Code. As was true in *McKenna v. State Emplolyees' Retirement Board,* 64 Pa. Commonwealth Ct. 269, 439 A.2d 1306 (1982), the contributions issue has not been presented, analyzed or adequately covered in this litigation. That issue is separately before this court in *State Employees' Retirement Board v. McKenna,* 621 C.D. 1982, now pending, with which the Supreme Court on September 20, 1982, has consolidated the board's appeal from that *McKenna* decision at 64 Pa. Commonwealth Ct. 269, 439 A.2d 1306.

As we noted at the outset, the motion for summary judgment here seeks only recalculation of the benefits of the plaintiffs; the granting of plaintiffs' motion for summary judgment in accordance with this opinion does not require any payment of benefits. Therefore, the issue with respect to the obligation for contributions will be taken up in its proper place.

## Conclusion

For the foregoing reasons, the plaintiffs' motion for summary judgment will be granted.

### Order

Now, January 27, 1983, plaintiffs' Motion for Summary Judgment is granted.

President Judge CRUMLISH, and Judges ROGERS, WILLIAMS and DOYLE did not participate in the decision in this case.