510 A.2d 819

J. Warren MATSON, Bert Collins, Harry Ingram and
Mary Ann Miaczynski

v.

HOUSING AUTHORITY OF the CITY OF
PITTSBURGH, Appellant.

Superior Court of Pennsylvania.

Argued April 15, 1986.

Decided June 2, 1986.

David B. Washington, Pittsburgh, for appellant.

Barbara M. Wolvovitz, Pittsburgh, for Matson, appellee.

Henry L. Miller, Pittsburgh, for Collins, appellees.

Before TAMILIA, KELLY and MONTGOMERY, JJ.

TAMILIA, Judge:

This is an appeal from a final judgment entered against appellant, Housing Authority of the City of Pittsburgh (hereinafter HACP) ordering payment for accrued vacation and sick leave to appellees.

Appellant, HACP, is a housing authority created in accordance with the Housing Authorities Act (35 P.S. § 1541 et seq.). Appellees, Matson, Ingram, Collins and Miaczynski, were employed respectively by the appellant from September 1942, February 1942, February 1948 and March 1957.

This action was commenced on December 29, 1977 when appellees served appellant with a Writ of Summons in Assumpsit. It was not until May 1980, following appellant's Praecipe for Rule to File Complaint, that a complaint was filed by appellees as former employees of appellant, HACP, to recover payment for accumulated sick and vacation leave to which an answer and new matter were filed by appellant. On October 28, 1981, appellee filed a motion for summary judgment alleging appellant was collaterally estopped from relitigating issues resolved in *Housing Authority of Pittsburgh v. Konrad C. Dorsch, et al.* at G.D. 75–3399 et seq. The Court en banc granted appellee's motion for summary judgment on April 26, 1981, and appellant appealed to the Superior Court. On March 23, 1984, in *Matson et al. v. Housing Authority* 326 Pa.Super. 109, 473 A.2d 632 (1984), the Superior Court reversed the granting of

summary judgment because the record was inadequate and the appellee's argument was based on dicta in *Dorsch, supra.* After remand, the case was submitted to the lower court on a stipulation of facts as a case stated. After argument, the lower court entered judgments for the appellees. The lower court denied appellant's exceptions on July 8, 1985, and appellant appealed to this Court.

During the period of employment in issue, the board of directors of the HACP implemented personnel policies which governed the terms of employment including vacation and sick leave of all non-union employees of the HACP. The appellees were made aware of the terms of successive personnel policies by distribution of copies or through office meetings. The 1970 personnel policy provided for the accumulation of vacation leave based on years of employment over a five year period, unlimited accumulation of sick leave and payment at the time of termination of employment for sick leave accrued during the last ten years of employment. The appellees were aware that it was the custom and practice of appellant to pay its employees, at the time of resignation, for accumulated vacation leave in the amount permitted by the terms of their employment. On November 30, 1971, the HACP board of directors adopted a new personnel policy, effective January 1, 1972, which eliminated payment for unused sick leave when employment was terminated and limited the accumulation and carryover of vacation time. All appellees submitted their resignations of employment prior to January 1, 1972.

During this period of time appellant had entered into a series of Annual Contributions Contracts with the U.S. Department of Housing and Urban Development (hereinafter HUD) and was the recipient of federal funds. The *HUD Handbook 7401*, dated March 1971, provided that:

  b. *Carryover of Leave.* If public practice in the locality includes a limitation on the amount of accrued unused sick or annual leave that may be carried over as a balance at the end of any year, the local agency shall adopt a comparable limitation. If pertinent public

practice does not include such limitations, the local agency may provide for a cumulative maximum carry-over of 30 days of unused annual leave at the beginning of any leave year. Unlimited sick leave may be accrued.

c. *Unallowable Leave Payments.* In the absence of conclusive evidence of pertinent local public practice to the contrary, the local agency policy shall not provide for:

(1) Payments for unused sick leave and compensatory leave.

(2) Payments for unused annual leave except upon separation of an employee from the local agency. Payments upon separation shall be based on the amount of annual leave carried over at the beginning of the current year plus the amount of annual leave earned and unused during the current year to the date of separation.

In his appeal, appellant has alleged the following issues:

1) Whether the personnel policy of 1970 was contrary to HUD regulations, when implemented after March 1971;

2) Whether the HACP can be required to expend funds contrary to HUD regulations and directives;

3) Whether the court erred in finding that the Housing Authority has non-federal funds from which to pay appellee's claims.

Initially, appellant contends the personnel policy of 1970 was contrary to and violated HUD regulations which were implemented after March of 1971. Appellant points out that a HUD audit of 1972 concluded the personnel policy of 1970 was not comparable to local public personnel policy and the policy provided for cash payments for unused sick and vacation leave in excess of HUD regulations. We believe and the lower court correctly held, that HACP is bound under contract and estoppel principles by its personnel policy authorizing payments for unused vacation and sick leave for employees who terminated their employment prior to January 1, 1972. Any alleged conflict with HUD regulations is irrelevant to the vested rights acquired by

these employees in their contract with HACP. *See Catania v. Commonwealth State Employees' Retirement Board*, 498 Pa. 684, 450 A.2d 1342 (1982), on return 71 Pa.Cmwlth. 393, 455 A.2d 1250 (1983).

In this regard, appellant contends the HUD regulations bind the Authority because they supplement those contained in the annual contributions contract and are mandatory upon the appellant, however, it ignores the fact that the appellant had the authority to execute contracts necessary to exercise the power of the Authority. (35 P.S. § 1550(w))

The personnel policy of 1970 constituted a binding part of appellee's employment contract with appellant, and the appellant is estopped to deny its authority to implement the personnel policy of 1970. Equitable estoppel can be applied to a governmental agency to preclude the agency from depriving a person of a reasonable expectation when such agency knew or should have known that such person would rely upon the representation of the agency. *Commonwealth Department of Environmental Resources v. Dixon Contracting*, 80 Pa.Commw. 438, 471 A.2d 934 (1984). If the appellant failed to comply with federal regulations, it should not be permitted to benefit by its own mistake to the detriment of its innocent employees. *See Albright v. City of Shamokin*, 277 Pa.Super. 344, 419 A.2d 1176 (1980). The parties have stipulated that the 1970 personnel policy provided for the payment of accumulated sick leave, appellees were aware of the custom and practice of appellant to pay for earned but unused vacation leave at the time of their resignation, and the 1972 personnel policy was implemented prospectively to provide long-term HACP employees with an opportunity to receive the benefits they had earned under the prior existing policy if they chose to terminate their employment prior to December 31, 1971. (R. part II pp. 5–7) After review of the record, it is apparent that appellees relied on the personnel policies of appellant to their detriment. This conclusion also addresses

appellant's argument on reliance in part four of its argument which we also find has no merit.

■ Appellant also alleges that the doctrine of preemption applies because the Housing Authority's action, which is permitted under state law, is prohibited under federal law. The United States Supreme Court has stated:

... state law may be preempted in either of two general ways. If Congress evidences an intent to occupy a given field, any state law fitting within that field is preempted. If Congress has not entirely displaced state regulation over the matter in question, state law is still preempted to the extent it actually conflicts with federal law. That is when it is impossible to comply with both state and federal law, or when state law stands as an obstacle to the accomplishment of the full purposes of the objectives of Congress.

*Silkwood v. Kerr-McGee Corporation,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984).

Here, Congress has vested in local public housing agencies the maximum amount of responsibility in administration of their housing programs. (42 U.S.C. § 1437). The personnel policy of 1970 provided greater vacation and sick leave benefits than HUD regulations. The lower court correctly resolved any potential conflict with federal law by concluding that federal regulations controlled the use of federal funds and appellant had other non-federal funds from which to satisfy their contractual obligations to appellees. Thus, we find there is no preemption problem.

Lastly, appellant contends the lower court erred in finding that appellant had non-federal funds to pay appellees claim. Paragraphs 15, 45, 46 and 48 of the parties' stipulation clearly indicate appellant had non-federal funds to pay these claims at the time of appellees' resignations. (R. part II, pp. 6, 13, 14 and 105a). After review of the record and the arguments of counsel, we conclude that the lower court's finding is supported by the stipulation.

Finding no error in the reasoning or findings of the lower court, we affirm the judgment of the court below.

Judgment affirmed.