562 A.2d 391

**POLICE PENSION FUND ASSOCIATION BOARD, an Agency of the City of Reading, Pennsylvania, Appellant,**

v.

**Thomas P. HESS, Appellee.**

**Thomas P. HESS, Appellant,**

v.

**POLICE PENSION FUND ASSOCIATION BOARD, an Agency of the City of Reading, Pennsylvania, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1988.

Decided June 30, 1989.

Petition for Allowance of Appeal Denied Nov. 27, 1989.

Jack A. Linton, City Sol., Peter F. Cianci, First Asst. City Sol., Reading, for appellant/appellee, Police Pension Fund Ass'n Bd., an Agency of the City of Reading, Pa.

Anthony C. Busillo, II, Harrisburg, for appellee/appellant, Thomas P. Hess.

Before CRUMLISH, Jr., President Judge, McGINLEY, J., and NARICK, Senior Judge.

McGINLEY, Judge.

The Police Pension Fund Association Board (Fund) and Police Officer Thomas P. Hess (Hess) cross-filed for summary judgment in the Court of Common Pleas of Berks County (common pleas court). The common pleas court determined that the City of Reading (City) was estopped from denying pension benefits to Hess because he relied on the City's prior representation that he would be eligible for benefits after twenty years service. The common pleas court entered judgment and the Fund and Hess have appealed.

The Fund and Hess entered into a stipulation of facts. Hess was twenty-three (23) years of age at the time he commenced employment with the City on January 23, 1963. When Hess began his employment police officers were eligible to receive pension benefits upon completion of twenty (20) years of service with no minimum age requirement. Hess was expressly informed by representatives of the City that he would be eligible for pension benefits after completion of twenty (20) years of service as a police officer regardless of age. In 1977 the Fraternal Order of Police (FOP), Lodge # 9 and the City met to collectively bargain employment terms and conditions including pensions pursuant to Section 1 of the Act of June 24, 1968, (Act III), P.L. 237.[1] When the parties arrived at an impasse[2] they pro-

1. Section 1 of Act III, 43 P.S. § 217.1 provides:
   Policemen or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall, through labor organizations or other representatives designated by fifty percent or

ceeded to binding arbitration. After hearing the Arbitrators issued an award which specified that all police officers presently on the force with twenty (20) years or more of service as of 1978 could retire with full pension benefits regardless of age. Those officers who did not meet this requirement would be eligible for full pension benefits after completing twenty (20) years of service and the attainment of fifty (50) years of age. The Fund and Hess agree that the award effectively enhanced the actuarial soundness of the fund.

Pursuant to the Arbitrators' award the City enacted an Ordinance [3] which required a minimum age of fifty (50) and twenty (20) years of service as conditions to the receipt of full pension benefits.[4] When the Ordinance was enacted

more of such policemen or firemen, have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, work conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act.

2. Section 4 of Act III, 43 P.S. § 217.4 relevantly provides:
   (a) If in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate, or if the appropriate lawmaking body does not approve the agreement reached by collective bargaining, with the result that said employers and employes are unable to effect a settlement, then either party to the dispute, after written notice to the other party containing specifications of the issues in dispute, may request the appointment of a board of arbitration.

3. The Ordinance relevantly provides:
   1. Each present member who attains the age of fifty (50) years and upwards who shall have served as an employee of the City for a period of twenty (20) years or more, shall, upon application to the Board, be retired from service and shall during the remainder of his life receive the pension benefits prescribed herein. Notwithstanding the above, the age requirement of fifty (50) years shall not apply to any member who has completed twenty (20) years or more of service prior to January 1, 1979.

4. Section 7 of Act III, 43 P.S. § 217.7 provides:
   (a) The determination of the majority of the board or arbitration thus established shall be final on the issue or issues in dispute and shall be binding upon the public employer and the policemen or firemen involved. Such determination shall be in writing and copy thereof shall be forwarded to both parties to the dispute. No appeal

Hess had approximately sixteen (16) years of service. On September 10, 1985, at the age of forty-six (46) and with twenty-two (22) years of service, Hess applied for full pension benefits. Pursuant to the Ordinance his request was denied.

■ Our scope of review of the grant of a motion for summary judgment is limited to determining whether there has been an error of law or a manifest abuse of discretion. *Miller v. Emelson*, 103 Pa.Cmwlth. 437, 520 A.2d 913 (1987). Summary judgment is properly granted where there is no genuine issue of material fact and the moving party has clearly established entitlement to judgment as a matter of law. *Kuehner v. Parsons*, 107 Pa.Cmwlth. 61, 527 A.2d 627 (1987).

■ On appeal, the Fund argues that the theory of equitable estoppel does not apply in the present case because the City did not intentionally misrepresent a material fact upon which Hess relied to his detriment. As to Hess' appeal Hess argues that the Arbitrators exceeded their authority in making the pension award and that the City's enactment of the Ordinance resulted in an unconstitutional infringement of his pension rights.[5]

therefrom shall be allowed to any court. Such determination shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the law-making body of such political subdivision or of the Commonwealth with respect to matters which require legislative action, to take the action necessary to carry out the determination of the board of arbitration.

5. Because Hess was successful before the court of common pleas, Hess was not aggrieved by the court's order and has no standing to appeal. *See* Pa.R.A.P. 501; *In Re: Appeal from Stop, Cease and Desist Order, Application for Variance and Constitutional Challenge of U.S. Aluminum Corporation of Pennsylvania*, 123 Pa.Cmwlth. 376, 553 A.2d 1046 (1989); *Middletown Township v. Pennsylvania Public Utility Commission*, 85 Pa.Cmwlth. 191, 210, 482 A.2d 674, 685 (1984) ("[m]ere disagreement with the ... legal reasoning ... does not confer standing [to appeal]."); 1 G. Darlington, K. McKeon, D. Schuckers, K. Brown, *Pennsylvania Appellate Practice*, § 501:4 (1986). Accordingly, we shall quash the Hess cross-appeal.

The Fund maintains that equitable estoppel is inapplicable because the City did not intentionally or materially misrepresent a material fact upon which Hess relied to his detriment. The Fund asserts that the City did not misrepresent anything to Hess. When he commenced his employment a police officer was entitled to pension benefits after twenty years of service. The Fund argues that a minimum age requirement was properly arbitrated and legislated. Finally, the Fund argues that the application of the doctrine of equitable estoppel would defeat the collective bargaining process because employees will assert reliance on conditions existing at the time of hiring instead of accepting conditions collectively bargained for throughout the employment relationship.

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by words or actions to expect. *Novelty Knitting Mills, Inc. v. Siskind*, 500 Pa. 432, 457 A.2d 502 (1983). The estoppel arises when a party intentionally or negligently misrepresents a material fact, knowing or having cause to know that another will rely on the misrepresentation, and that the other justifiably relies upon the misrepresentation to his detriment. *Brog Pharmacy v. Department of Public Welfare*, 87 Pa.Cmwlth. 181, 487 A.2d 49 (1985). The elements of estoppel must be proven by clear and convincing evidence, *Sepko Appeal*, 84 Pa. Cmwlth. 359, 479 A.2d 665 (1984), with the critical elements being misrepresentation and justifiable reliance. *Siskind.* This is where the common pleas court erred. Herein, the City did not intentionally or negligently misrepresent a material fact to Hess. The City informed Hess that police officers were entitled to a pension after twenty years of service, regardless of age, when Hess joined the force in 1963. This representation was accurate until the Arbitrators' award and the subsequent implementation of the award by City Ordinance. Thereafter, the City did not continue to represent to Hess that he would be eligible for pension benefits after twenty years of service. The City is

not equitably estopped from requiring Hess to reach fifty years of age before receiving his pension.[6]

In Pennsylvania, public retirement benefits are considered deferred compensation *Wright v. Retirement Board of Allegheny County*, 390 Pa. 75, 134 A.2d 231 (1957). The term "vesting" has traditionally been used when the employee, having made all required contributions, has completed the number of years of service required for eligibility. *Hickey v. Pittsburgh Pension Board*, 378 Pa. 300, 106 A.2d 233 (1954). Our appellate courts in *Catania v. Commonwealth State Employees' Retirement Board (Catania II)*, 71 Pa.Cmwlth. 393, 455 A.2d 1250 (1983) and *Association of Pennsylvania State College and University Faculties v. State System of Higher Education (APSCUF)* 505 Pa. 369, 479 A.2d 962 (1984) sought to define the contract rights of the individual employee relative to the public employer in the absence of a collective bargaining agreement establishing such rights. *Philadelphia v. District Council 33*, 112 Pa.Cmwlth. 90, 535 A.2d 231 (1987). In *Catania II*, an exhaustive review was conducted of all the major decisions which have considered whether or not statutory changes in pension plan terms can be constitutionally applied to pension plan members before and after vesting. See *Catania II*, 71 Pa.Cmwlth. at 400–401, 455 A.2d at 1253–1254. Our Court in *Catania II*, concluded that where a member's rights have been treated as "vested" by reason of attaining the minimum years of tenure, any and all changes which reduce the benefits then applicable are barred.[7] As to pension fund members who had

6. Although we reject the estoppel theory, when the common pleas court errs, we may still affirm where the result is correct and the correct basis for the decision is clear on the record. *Rhoads v. Lancaster Parking Authority*, 103 Pa.Cmwlth. 303, 520 A.2d 122 (1987).

7. In *Wright*, the Supreme Court permitted an amendment, effective after "vesting," that fixed a deadline for repayment of withdrawn contributions in order to qualify for a newly-granted increment of 5% of the annual retirement allowance for each service year beyond twenty. Because compliance with the deadline was a condition precedent to obtaining the new benefits, the Supreme Court majority did not regard that new provision as having the effect of reducing benefits already in effect.

commenced employment but not attained minimum tenure before the enactment of the legislative changes, our Supreme Court has reviewed and approved statutory changes in pension plan terms that increased the contribution rate of employees, and established a minimum age, provided the changes enhanced the "actuarial soundness" of the pension fund. *See Harvey v. Allegheny County Retirement Board*, 392 Pa. 421, 141 A.2d 197 (1958); *Eisenberger v. Harrisburg Police Pension Commission*, 400 Pa. 418, 162 A.2d 347 (1960); and *Geary v. Allegheny County Retirement Board*, 426 Pa. 254, 231 A.2d 743 (1967). However, in *APSCUF*, the Supreme Court went further and held that a unilateral legislative change in the retirement benefits of nonvested members would be prohibited without regard to the Commonwealth's claim of actuarial enhancement.[8]

In the present case, the FOP and the City met to collectively bargain the pension issue. Section 1 of Act III expressly includes "[t]he right to bargain collectively ...concerning the terms and conditions of their employment, including ...pensions." In *City of Allentown v. Local 302, International Association of Fire Fighters*, 511 Pa. 275, 288, 512 A.2d 1175, 1181 (1986) our Supreme Court reasoned:

It would appear that by including retirement and pensions in the items which policemen and firemen have a right to bargain, the legislature has evidenced an intention that the public employer no longer has exclusive control over the structure of pension systems. Once the matter is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement.

8. In *APSCUF*, an amendment was made to the State Employees' Retirement Code, 71 Pa.C.S. § 5101 et seq., requiring each member of the State Employees' Retirement System to contribute an additional one and one-quarter percent (1¼%) of his or her wages into the fund. Insofar as it applied to employees who were members prior to the amendment's effective date, the Supreme Court held that such a unilateral modification was void as applied to both vested and nonvested members as an unconstitutional impairment of contract.

Therefore, both parties may change the pension plan by mutual consent. However, herein, the FOP and the City reached an impasse concerning the pension issue. There was no mutual consent by the parties to change the pension. The pension issue was submitted to arbitration under Act III as a legitimate term or condition of employment falling within the statutorily permitted scope of collective bargaining. *In the Matter of the Arbitration Between the Borough of Cambridge and the Police Department*, 53 Pa. Cmwlth. 251, 417 A.2d 291 (1980). The Arbitrators' award modified pension eligibility to require attainment of a minimum age of fifty (50) years in addition to twenty years of service before receipt of pension benefits. This award was objected to by the Police Arbitrator. (Arbitrators' Award, Appellants' Brief at 33.) An Ordinance encompassing the new pension requirement was quickly passed. The common pleas court concluded that the Ordinance was not a unilateral legislative act, but was the result of the collective bargaining process.[9] The common pleas court also concluded that Section 4304 of The Third Class City Code (Code)[10] did not prohibit the enactment of the ordinance and as such the Arbitrators' award was not in excess of their authority.[11] However, Section 4034 of the Code does not address and is not determinative of whether or not the city council or the Arbitrators had authority to retroactively diminish Hess' pension right by requiring that he reach a minimum age.[12]

9. The common pleas court made this determination in regard to Hess' argument that the minimum age requirement represented a legislative impairment of his contract rights.

10. Act of June 23, 1931, P.L. 932 *as amended*, 53 P.S. § 39304. Section 4304 of the Code provides:
    Whenever any person shall become entitled to receive an allowance from the police pension fund, and shall have been admitted to participate therein, he shall not be deprived of his right to an equal and proportionate participation therein upon the basis upon which he first became entitled thereto.

11. We concur with the common pleas court that Section 4304 of the Code provides protection to those entitled to receive an allowance from the police pension fund and admitted to participate in the plan.

12. The facts of this case can be distinguished from the case of *Upper Providence*. In *Upper Providence*, the Supreme Court reviewed an

While binding arbitration may be part of the collective bargaining process an arbitrator's award entered as a result of a bargaining impasse is not the equivalent of a mutually bargained agreement. The arbitrators' authority is limited. They cannot mandate that the public employer perform an illegal act, i.e., one which is not statutorily authorized or an act which is prohibited by law. *Upper Providence.* An arbitration award may only require a public employer to do that which it could do voluntarily. *City of Washington v. Police Department of Washington,* 436 Pa. 168, 259 A.2d 437 (1969). The Ordinance, without any mutually agreed upon foundation retroactively diminishes the pension rights of those individuals who entered the system prior to January 1, 1978. The minimum age requirement forces Hess to work several more years in order to enjoy his pension rights. The Ordinance cannot be applied so as to diminish Hess' pension rights; the Fund improperly denied benefits to Hess. Hess' contractual pension rights became fixed upon his entry into the system and cannot be subsequently diminished or adversely affected in this manner. *APSCUF.*[13]

Accordingly, we affirm the order of the common pleas court for the reason set forth in this opinion.

arbitration award which allowed the Township of Upper Providence (Township) to eliminate post-retirement hospital and medical benefits to retired police officers. The Township is a home rule community, having adopted a home rule charter under the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, P.L. 184, *as amended,* 53 P.S. §§ 1–101 through 1–1309. Section 302 of the Home Rule Act sets forth the "Limitation on municipal powers" for municipalities chartered under its auspices. Section 302(b) provides, in relevant part, that "No municipality shall (iii) be given the power to diminish the rights or privileges of any former municipal employe entitled to benefits or any present municipal employe in his pension or retirement system...." 53 P.S. § 1–302(b)(iii). The Supreme Court concluded that the arbitrators' award eliminating hospital and medical benefits was as a violation of section 302 of the Home Rule Act. Therefore, the Supreme Court held that because the city council was prohibited by the Home Rule Charter Act from voluntarily eliminating pension and retirement benefits, the arbitration award was in excess of its powers and was thus void.

**13.** Our determination is limited to Hess' pension rights. The issue as to whether the award or Ordinance can be applied prospectively is not before us.

## ORDER

AND NOW, this 30th day of June, 1989, the order of the Court of Common Pleas of Berks County at No. 113 January 1986, dated February 23, 1988 is affirmed as to the appeal of the Police Pension Fund Association Board and the appeal of Thomas P. Hess is quashed.